GOLDE CLOTHES SHOP, INC. *vs.* SAMUEL SILVER ET ALS.

Third Judicial District, Bridgeport, October Term, 1920.

WHEELER, C. J., BEACH, GAGER, CASE and HAINES, Js.

While a voluntary surrender of a lease by the lessee will not affect the rights of a subtenant acquired under an authorized sublease, the rights of the sublessee necessarily fall if they are expressly made dependent upon an option or privilege of the original lessor to terminate the original lease and all subleases, and such option or privilege is in fact exercised by him in the manner prescribed by the lease.

In the present case A leased city property to H for ten years, from December 1st, 1913, reserving an option to terminate the lease at any time after one year upon giving H a written notice of four months and paying him a certain percentage of the cost of a building which H was to, and did, build upon the leased premises. H sublet one of the stores in the new building to the plaintiff for three years, with a privilege of renewal for five years, but subject nevertheless to all the terms and conditions contained in the original lease, and at the same time A promised H not to exercise his option to terminate the original lease in such manner as to have the same take effect prior to August 1st, 1918, when the lease to

the plaintiff expired. In April of the following year (1916) A sold the premises to the defendants who succeeded to all his rights and obligations. On December 9th, 1916, the defendants gave a written notice to H to the effect that four months thereafter and upon payment to him of $3,600, he would be required to surrender his lease and all subleases affecting the premises, except the lease to the plaintiff. Eleven days before the expiration of the four months the defendants paid the $3,600 to H and he quitclaimed to the defendants all his interest in the premises. The plaintiff paid the rent thereafter accruing to the defendants up to August 1st, 1918, and early in that year negotiated for but did not secure a lease for two years more from August 1st. No claim was made by the plaintiff that it had a right to renew its lease for five years, until after the defendants had brought an action of summary process against it. In the present action the plaintiff sought to restrain the defendants from proceeding with their summary process case, and for the specific performance of the renewal clause in its sublease. *Held:*—

1. That there was nothing in A's promise not to exercise his option of termination prior to August 1st, 1918, which afforded any basis whatever for the right of the plaintiff to a renewal of its lease for five years; on the contrary, that such privilege of renewal was expressly made contingent upon the terms of the original lease, under which A or his assigns might terminate H's lease and thereby the rights of the plaintiff as a sublessee, on August 1st, 1918, or any time thereafter.

2. That a valid exercise of this right of termination or forfeiture, must accord with the terms of A's lease to H.

3. That the fact that H surrendered his lease to the defendants eleven days prior to the expiration of the four months prescribed for notice, did not affect the right of the defendants to terminate the lease, nor make the surrender a voluntary one on the part of H.

4. That while the defendants, in attempting to terminate H's lease, and in demanding possession of the premises—except the store occupied by the plaintiff—prior to August 1st, 1918, exceeded their rights, the plaintiff was not disturbed or in anywise injured, and therefore was not in a situation to ask for a renewal of its lease for five years, on the ground that the surrender of H was voluntary, since it was obvious that neither plaintiff or defendants ever intended such a result, the consequences of which would be unreasonable and inconsistent with the remedy of specific performance.

Argued November 10th, 1920—decided January 26th, 1921.

SUIT for the specific performance of an agreement to renew a lease of premises occupied by the plaintiff, for

an injunction *pendente lite*—which was granted—, and for damages, bought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

Armstrong leased a lot on the southeast corner of Gold and Main Streets, Bridgeport, to Hayes for the term of ten years from September 1st, 1913, who agreed to erect a building thereon to cost not less than $6,000. Hayes was given the privilege of subletting the whole or any part of this building. The parties further agreed that upon tender of certain amounts stated in an agreement, Exhibit C, executed by the parties contemporaneously with the lease, Hayes would, upon four months' written notice signed by Armstrong or his assigns and delivered to him, execute and deliver a release of said lease to Armstrong, fully discharging the same, and would deliver to him possession of the leased premises.

The agreement, Exhibit C, made contemporaneously with the lease to Hayes, recited the percentage of the cost of the building which Armstrong agreed to tender Hayes, on each December 1st beginning with December 1st, 1914, and continuing down to December 1st, 1923; the amount of the tender diminishing as the term of the lease diminished. Hayes entered upon the premises and erected the building provided by the lease.

There were three stores on the ground floor of the building, and on May 29th, 1915, Hayes sublet the corner store to the Golde Clothes Shop, Inc., the plaintiff herein, for three years from August 1st, 1915, with the privilege of renewal from August 1st, 1918, to December 1st, 1923, subject to the terms, provisions and conditions of the lease of December 1st, 1913, by Armstrong to Hayes. The renewal clause of the sublease concluded as follows: "so that if said renewal

privilege is exercised the terms and provisions of such sublease shall in no respect be inconsistent with the obligations of the party of the first part [Hayes] herein as contained in the indenture of lease [referring to lease of Armstrong to Hayes]; intending hereby that the term of such sublease, if executed, shall be not longer, nor more definite and certain than the said indenture of lease itself."

Contemporaneously with the sublease by Hayes to plaintiff, Armstrong made a written agreement with Hayes in which it was recited that Hayes was desirous of renting this corner store to plaintiff for three years from August 1st, 1915, and desired to avoid the possibility of the sublease being terminated by the exercise by Armstrong of his right to terminate his lease to Hayes, as provided in the lease and accompanying contract. The agreement concluded: "Now therefore the said . . . Armstrong hereby promises and agrees that until said Golde Clothes Shop, Inc., violates any provision of its sublease from said Hayes, he will not exercise his privilege and option to terminate the term of, and the indenture of lease aforementioned in such manner as to have the same take effect prior to August 1, 1918, unless, however, the said Golde Clothes Shop, Inc., should vacate the said store prior to August 1, 1918, in which event the agreement of said . . . Armstrong herein made shall *ipso facto* become null and void, and the original lease and contract therein mentioned, both executed by the parties hereto, shall in all respects be in full force and effect, and binding."

Plaintiff took possession of the corner store in accordance with the terms of its sublease.

On April 5th, 1916, Armstrong conveyed the premises leased to Hayes to Silver, and he on the same day conveyed to each of the other two defendants an undivided one-third interest. On December 9th, 1916,

defendants gave Hayes written notice that they elected to terminate the lease and would pay the amount stipulated in Exhibit C as the condition of such termintion, viz., $3,600, and would require with such payment that Hayes deliver to them a quitclaim deed releasing the premises from the lease, Exhibit A, "excepting only the lease to the Golde Clothes Shop, Incorporated, referred to in Exhibit C, and to deliver to the undersigned [defendants] the possession of the leased premises."

Defendants on March 28th, 1917, tendered Hayes $3,600, and Hayes accepted the payment and delivered the quitclaim deed as required on said date, being eleven days before the expiration of the four months' period provided for in Exhibit A. Thereafter defendants notified plaintiff that the lease of Armstrong to Hayes had been terminated, and that they had acquired Hayes' interest, and that the rent payable by plaintiff under its lease to Hayes would in future be payable to defendants, and the plaintiff paid to defendants and they accepted the rent accruing under its sublease from August 1st, 1917, to August 1st, 1918.

Prior to February, 1918, plaintiff and defendants negotiated for a lease of this store for two years commencing August 1st, 1918, but without reaching an agreement; and neither at this time nor at any time until April 16th, 1918, did plaintiff claim that it could assert against defendants the right to a renewal of its lease from August 1st, 1918, to December 1st, 1923, although on April 15th, 1918, defendants notified plaintiff that its lease expired on August 1st, 1918.

Prior to August 1st, 1918, plaintiff demanded of defendants a renewal of its lease from August 1st, 1918, to December 1st, 1923, and tendered the rent for three months from August 1st, 1918, and defendants refused to accept the same.

On August 2d, 1918, defendants brought summary process against plaintiff for the sole purpose of asserting their right to the possession from and after August 1st, 1918. The defendants concede that the plaintiff is a desirable tenant, and that their purpose is to secure a larger rental.

*Arthur M. Marsh* and *Thomas M. Cullinan,* for the appellant (plaintiff).

*William H. Comley, Jr.,* and *Robert E. DeForest,* for the appellees (defendants).

WHEELER, C. J. The parties to this litigation are in practical agreement in the construction of the lease from Armstrong to Hayes, with its accompanying agreement, and in the construction of Hayes' lease to plaintiff. As to Armstrong's agreement postponing the right to terminate his lease with Hayes until August 1st, 1818, they seem to differ. Armstrong leased to Hayes for ten years from December 1st, 1913, and gave him the privilege of subletting, and provided that Armstrong might terminate this lease at any time after December 1st, 1914, upon payment of a certain stipulated percentage of the cost of a building erected by Hayes on the plot leased, based upon the time of termination. Hayes' right of subletting was thus terminable at the option of Armstrong at any time after December 1st, 1914. Hayes, on May 29th, 1915, sublet the corner store to plaintiff for three years from August 1st, 1915, and further gave plaintiff the privilege of renewing this sublease from August 1st, 1918, to December 1st, 1923, subject to the terms of the lease of Armstrong to Hayes. If this were all, since Armstrong could exercise his option of termination at any time after December 1st, 1914, the plaintiff's sublease from Hayes must termin-

ate whenever Armstrong exercised his option in accordance with the terms of his lease to Hayes. Recognizing this, Hayes procured from Armstrong an agreement that, unless plaintiff violated his sublease or vacated the store leased, he would not exercise his option of termination prior to August 1st, 1918. The effect of this agreement was to prevent Armstrong from terminating the lease to Hayes prior to August 1st, 1918, and to give plaintiff the sublease for three years, free from the liability of its termination for that period. The plaintiff cannot find in this agreement authority from Armstrong for the renewal for five years as claimed by it. The agreement itself directly negatives this claim. In its recitals it states the purpose of Hayes is his desire to sublet this store in question to plaintiff for a period of three years from August 1st, 1915, and to avoid the possibility of its being terminated by Armstrong under the terms of his lease to Hayes. Neither in the recital nor in any other part of this agreement is mention made of a renewal of this lease. Armstrong has not by this agreement given to Hayes the right to a renewal. Had he done so, the period of renewal as well as the original term of the lease to plaintiff would have been free from the liability of termination by Armstrong under Exhibit C.

There was no attempt in this agreement to avoid Armstrong's right of termination over the period covered by the renewal, and the sublease itself makes the renewal privilege subject to the terms of the lease to Hayes, expressly provides that it shall not be inconsistent with the lease to Hayes, and declares its intent to be that the term of the sublease shall not be longer, nor more definite and certain, than the lease itself. This is a plain declaration that the right of renewal is not intended to conflict with Armstrong's right of termination. The plaintiff thus had the right to a lease up to August 1st,

1918, with a right of renewal until December 1st, 1923, provided Armstrong did not terminate his lease to Hayes for the whole or any part of its term subsequent to August 1st, 1918.

The plaintiff's position, that a valid exercise of this right of forfeiture must be in accordance with terms of the lease to Hayes, accords with our law and the law as generally expressed elsewhere. *Camp* v. *Scott*, 47 Conn. 366, 375; 24 Cyc. 1339, and cases cited. It would follow that upon the valid exercise of the right of forfeiture by Armstrong or his assigns, the lease to Hayes would be at an end; and its termination would also end the plaintiff's right to a renewal under its sublease. The plaintiff insists that there has been no such exercise of forfeiture, while the defendants assert the contrary. Armstrong conveyed the premises to Silver, and Silver in turn conveyed a one-third interest to each of the two other defendants. The defendants thus succeeded to Armstrong's interest in the property and to the obligations arising under the Hayes lease and the agreement of Armstrong with Hayes.

On December 9th, 1916, the defendants gave Hayes a notice in writing that, pursuant to the terms of his lease, upon the expiration of the period of four months after date they would pay him $3,600 and require from him at the time of such payment a release of the lease and subleases affecting these premises, excepting only the lease to plaintiff. On March 28th, 1917, eleven days before the four months' period expired, Hayes accepted this sum and gave a quitclaim deed as required, and defendants thereupon notified plaintiff of the termination of the Hayes lease. The plaintiff says that this was a voluntary surrender by Hayes and made without compliance with the express requirements of the lease. A voluntary surrender by a principal lessee to a principal lessor, effected in a manner contrary to

the provision of termination in the lease, does not affect the rights of a tenant acquired under a sublease which the lessor had authority to make. The surrender will end the rights of the principal lessor in his lease; it will leave the rights of his under-tenant unimpaired, and make of him the tenant of the principal lessor upon the terms of the sublease. "That surrender, and the consequent merger of the greater and lesser interest, terminated the original lease, and the term created thereby, as between the parties to the lease and the surrender. . . . The interests and the terms of the subtenant of the lessee continued as if no surrender had been made. The defendants, the surrenderees and owners in fee, became the immediate landlords of the plaintiff, with only such rights as his lessor would have had to the possession of the premises before the expiration of the term." *Eten* v. *Luyster*, 60 N. Y. 252, 259. Every surrender by a principal lessee is voluntary, unless the lessor enforces the right of termination in accordance with the reservation of his lease. Relying upon these established principles, the plaintiff argues that the surrender of Hayes to defendants was voluntary for two reasons: first, it was made eleven days before the four months' period of notice had expired. This provision does not affect the right to terminate. It exists for the benefit of the tenant and may be waived by him. There must be a demand, but the tenant may surrender after demand and before the four months has expired. Second, the surrender was voluntary since the right to terminate could not be exercised until August 1st, 1918. This is a wrong interpretation of the lease. The lease could be terminated at any time after Armstrong gave Hayes the right to lease to plaintiff for three years. But it could not take effect until after August 1st, 1918, for Armstrong had agreed with Hayes that he would not exercise his right of termination prior

to August 1st, 1918. At their option, defendants could exercise their right of termination at any time after their agreement with Hayes, whether this were done prior to August 1st, 1918, or subsequent to this time. The right was not confined to the plaintiff's store, but included two other stores, being all the rest of the building. As to none of these premises could this right be exercised prior to August 1st, 1918.

When the defendants demanded the premises of Hayes, excepting the store leased to plaintiff, they exceeded their rights. As to all of the premises prior to August 1st, 1918, the defendants had no right of termination, and Hayes, when he surrendered this, gave up what he was under no compulsion to surrender. His action was, as to the occupation of the premises prior to August 1st, 1918, voluntary. But their demand as to these premises subsequent to August 1st, 1918, was within their rights, and Hayes' obligation under his lease required him to surrender the premises for this period, and his surrender for this period was involuntary because legally enforceable. The plaintiff insists that "a landlord cannot enforce a forfeiture of such portion of the demised premises as he desires to retake into his possession, and waive it as to the rest of the premises. He must enforce the forfeiture against the whole of the demised premises or must waive it altogether." Whether the plaintiff is right in this need not be considered, for that is not this case. Here the defendants, expressly excepting the plaintiff under its lease for the period prior to August 1st, 1918, demanded a release of the rest of the premises. Their demand was greater than they had the legal right to make, in that it included a period over which they had no control, but the larger part was within their rights.

The plaintiff assumes that the leading case of *Eten* v. *Luyster*, 60 N. Y. 252, presents a case of a voluntary

surrender on all fours with this case. There is this significant difference. There was no demand made in that case. During the term of a sublease legally made and subject to termination by the principal lessor upon a sixty days' notice, the principal lessee surrendered his lease to the lessor. It was wholly a voluntary surrender, and one not made in accordance with the terms of the principal lease. It could not prejudice the rights of the subtenant. Its effect was to merge the estate of the principal lessor and principal lessee, and to convert the owner into the lessor of the subtenant.

The doctrine of the case upon the question of surrender conforms to our view; the situation presented by its facts distinguishes it from this case. If the surrender of Hayes had been wholly voluntary, then the sublease would have been wholly effective with its right to a renewal. The plaintiff's conception of the principles of law involved is a sound one, but their application depends upon our holding that Hayes' surrender was voluntary. Our interpretation of the legal situation, as developed by the several exhibits in the case, finds support in the manifest understanding of the parties. After the notice of termination, the plaintiff made no claim of a right to a renewal, but, on the contrary, paid the rent as it accrued up to the end of the three-year period and entered upon negotiations for a lease for two years from August 1st, 1918, and then made no claim of its right to a renewal under its existing sublease for five years. The record justifies the defendants in their inference that the claim to a renewal under the sublease first occurred to the plaintiff after the summary process action.

The defendants did not seek to disturb the plaintiff in its three-year term. They undoubtedly believed they had the right to terminate the lease to Hayes, except as to the portion sublet to the plaintiff. They

Golde Clothes Shop, Inc. *v.* Silver.

could not have anticipated that their act of termination destroyed their right to terminate plaintiff's right to a renewal for five years and subjected them to the obligation of granting this renewal, because they had assumed Hayes' sublease to plaintiff. Plaintiff and defendants alike never intended such a result, leading to consequences at once unfair and unreasonable and inconsistent with the remedy of specific performance which this complaint seeks.

The finding that the notice and payment were made pursuant to the terms of the lease was not strictly accurate; the subordinate facts sufficiently appear, and they support our conclusion that the surrender was in part voluntary and in part involuntary. The finding that "thereafter the defendants notified the plaintiff that the Hayes lease had been terminated in accordance with the terms thereof," was correct, if "thereafter" is to be taken as April 15th, 1918, but since, as the context shows, it was intended as of a time shortly after March 28th, 1917, the finding is inaccurate. We have read paragraph 18 of the finding in connection with paragraph 11 of the plaintiff's proposed finding, and in the opinion treated paragraph 11 as the finding upon this subject. In view of our treatment, the corrections of the finding do not become important.

There is no error.

In this opinion the other judges concurred.