NET REALTY HOLDING TRUST *v.* CLINTON NELSON
ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE NO. 142765

Memorandum filed January 12, 1976

*Stremlau & Larsen,* for the plaintiff.

*Koskoff & McMahon,* for the defendants.

GRILLO, J.   This action relates to a claim by the defendant lessees that they, having moved from the demised premises during the term of the lease and without paying the rental charges, are insulated from liability for that nonpayment since, by virtue of a violation by the plaintiff landlord of the orthodox "peace and quiet enjoyment" covenant in their lease, their right to the benefits of that provision has been denied them.   Legalistically speaking, the plaintiff asserts an unjustified abandonment of the leased premises by the defendants, while the defendants contend they have been constructively evicted because of the plaintiff's breach of the covenant.

Pragmatically speaking, the defendants maintain that the intrusion and continued presence of trespassers on the leased premises (part of a large shopping center owned by the plaintiff) and on the adjoining areas discouraged attendance at their establishment, forcing them to "close shop."

The premises in question were leased to the defendants, who operated a miniature golf course thereon, for a period of two years from January 15, 1973. The defendants left the premises about the middle of February, 1975. Window panels, adjacent to the corridors, would allow passersby and the curious to view the golf course. Groups of people would come on the premises even though they did not play. The golf course is one of many businesses and recreational facilities in the enclosed shopping center in the Meriden Mall. The course and shopping center attracted many young people, some of whom loitered boisterously on the premises. When that number exceeded, in the opinion of the defendants, a reasonable number, the security guard was called who would disperse the trespassers. Those persons, however, would eventually return. An altercation in the nature of an assault on the defendants' employee and a theft of the cashbox of the defendants occurred because of those intruders. Frustrated by incidents of the type outlined above, the ability of the defendants to carry on their business in an orderly fashion was jeopardized, business declined, and they ultimately abandoned the premises. Succinctly stated, the position of the defendants would seem to indicate that the plaintiff landlord should have taken action to preclude the detrimental activity heretofore set forth, that it was negligent in not so doing, and that that constituted a violation of their right to quiet enjoyment of the premises, justifying their canceling the lease.

The covenant of quiet enjoyment is that the grantee shall have legal quiet and peaceful possession and is broken only by an entry on and an expulsion from the land or from actual disturbance of possession by virtue of some paramount title or right. 20 Am. Jur. 2d, Covenants, Conditions, and Restrictions, §§ 97, 98. A constructive eviction is said to arise when a landlord, while not actually depriving a tenant of possession, has done or suffered some act by which the premises are rendered untenantable. *Cerruti* v. *Burdick*, 130 Conn. 284, 286–87. The defendants did not have the right to quit possession unless some act of the plaintiff rendered the premises uninhabitable, resulting in a constructive eviction. *Weiner* v. *Frauenglass*, 10 Conn. Sup. 355, 357. A disturbance or entry by a mere intruder is not sufficient to constitute a breach of a covenant of quiet enjoyment. 21 C.J.S., Covenants, § 108. The obligation of the landlord to protect his tenant relative to the tenant's right to quiet and peaceful possession and enjoyment extends only to evictions and disturbances caused by himself or by someone with a paramount title. Thus a hindrance of that enjoyment by a mere intruder is no ground of action for breach of covenant of quiet enjoyment. 3 Thompson on Real Property (1959 Replacement) § 1130, pp. 477–78.

The evidence in this case is clear that any interference with the defendants' tenancy was not done with the plaintiff's knowledge, permission or direction. Any relationship between the plaintiff and the acts of interference complained of was too attenuated for it to be held responsible for the disturbance of the defendants' tenancy. See *Dietz* v. *Miles Holding Corporation*, 277 A.2d 108 (D.C. App.) (congregating by "hippie people" on leased premises). Certainly if a covenant of quiet enjoyment is not broken by one who asserts an

inferior right, it can hardly be validly maintained that the illegal activity of trespassers, assaulters and thieves that wrecks a business is to be equated with a breach of that covenant by an innocent landlord. See *Jarrett* v. *Scofield*, 200 Md. 641, 645.

Even assuming, arguendo, that it was incumbent on the plaintiff to assure the defendants' right to quiet enjoyment by positive steps, although the lease did not so provide, the plaintiff arranged for continuous patrolling of the mall by security guards. The merchants association of the mall also employed guards. Furthermore, the plaintiff consulted with the Meriden police department whose personnel admittedly also patrolled the mall. Even if we are to assume that acts of ordinary negligence on the part of a landlord, growing out of his contractual duties as a covenanter, amount to a constructive eviction, there is no evidence in the record to support a finding that this plaintiff was guilty of any negligence. See *W. E. Stephens Mfg. Co.* v. *Buntin*, 27 Tenn. App. 411, 417.

In construing one's obligations under a contract the surrounding circumstances should be considered. *Beach* v. *Beach*, 141 Conn. 583, 589. The defendants, when they entered into the lease, could reasonably expect that a shopping center encompassing many multifaceted recreation and business stores would attract thousands of persons including some undesirable trespassers. To have expected the quietude and decorum of a cloistered convent in a hustling, bustling business mall would have been completely unrealistic, as it would have been to suppose that the plaintiff could deter all the unpleasant incidents narrated above. The plaintiff took adequate preventive measures to minimize loitering, damage or injury to the defendants and their business.

The parties agreed that even though the plaintiff mitigated damages by rerental of the premises, the loss of rental during the vacancy amounted to $10,803.92.

Judgment may enter for the plaintiff to recover of the defendants the sum of $10,803.92, and attorney's fees of $1200.

Judgment may enter for the plaintiff on the counterclaim of the defendants.