[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brought this action against defendant in five counts alleging that defendant breached the covenant of quiet enjoyment, the covenant that the property would be kept fit for the purpose for which it was leased, his agreement to furnish water and heat to the premises, his agreement to keep the premises in good repair and that defendant's failure to provide basic utilities violated the Connecticut Unfair Trade Practices Act.
Plaintiff leased a store at 35-37 LaSalle Road, West Hartford from defendant's predecessor in title for the purpose of running a paint store and for storage of merchandise. Defendant acquired the property in 1985. In October, 1986, defendant made application to the Town of West Hartford for a permit to renovate the facade of the building by removing the old facade and replacing it with a new one. While defendant offered plaintiff a new lease at a higher rental following the expiration of the lease on November 30, 1987, plaintiff declined to enter into such a lease. Following issuance of a permit by the town, work began on the renovation in December, 1986. Plaintiff was not notified in advance that the work was to be begun. The renovation required erection of scaffolding and a plywood barricade and tunnels to allow access to plaintiff's store. Plaintiff's sign on the old facade was removed by employees or agents of defendant and discarded without plaintiff's permission. Plaintiff did supply a banner with its name on it to defendant CT Page 98 which was placed on the outside of the barricade.
Testimony established that the plaintiff's store in West Hartford did about 60% of its business at wholesale and about 40% at retail. Wholesale customers typically parked in the lot behind the building and used the rear door to load their purchases. Once renovations began, that lot was filled with construction equipment. Many of those customers complained about the problem of access to the store. From late December, 1986 to June, 1987, the manager of the store serviced the wholesale accounts by delivering their orders to them instead of spending his time making sales calls to develop new accounts.
Plaintiff's witness testified that there were occasions when water service was interrupted and the bathroom on the premises could not be used. On those occasions, the assistant manager closed the store to allow her to go to the bowling alley in the building to use the bathroom there. On some occasions the electricity was off and the premises were without heat. When such problems occurred, plaintiff's employees called defendant and spoke with his secretary. Defendant testified that when complaints were received, he would contact a professional to handle them. None of plaintiff's witnesses could remember how long such interruptions in utility service lasted on each occasion or for how long the premises were without heat nor was there any testimony as to the cause of any of these interruptions.
In February, the ceilings began to leak. Because water was leaking into light fixtures, those lights had to be turned off. When it rained, water leaked onto the office furniture and caused flooring in the storeroom to warp and buckle. The warped floor meant that the rear door to the parking lot could be opened only part way. Around Memorial Day, plaintiff's employees had to move five gallon paint buckets out of the storeroom because the floor's condition made it unsafe to store them there. When phone calls were made to Udolf Properties, defendant's secretary said they were working on the problem. Defendant's son testified that he was aware of the leaking roof and the warping floor and notified the foreman of the problems. Mr. Caruso testified that he was aware of a "slight leak" in the roof, that it was repaired, but didn't know how long it took. The roof was tarred during the summer of 1987. In the meantime, plaintiff's employees used drop cloths to protect the furniture whenever it rained. By April, the warped floor prevented the rear door from opening more than about 6 inches.
Plaintiff contends that defendant's renovation work, roof leaks, interruption of heat or water and obstruction of CT Page 99 the parking areas deprived it of its right, under the lease, to have "quiet and peaceable possession and enjoyment of said premises." In Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22,25 (Super.Ct. 1976), Judge Grillo pointed out that the covenant of quiet enjoyment is the tenant will have "legal quiet and peaceful possession and is broken only by an entry on and an expulsion from the land or from actual disturbance of possession by virtue of some paramount title or right. 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, secs. 97, 98." Judge Spada, in Mitchell v. Blonder, Dock. No. CVH 7905-47 (June 10, 1980) #H223 pointed out that the covenant of quiet enjoyment does not embrace the vernacular of current speech, but has a specific common law history. While plaintiff points to Galasinski v. Kurt Wittek Assoc., Dock. No. CVNO 8601-630 (February 25, 1986) #SNBR 226 as a similar case, that action involved an action for an injunction and contains no analysis of what the covenant encompasses. This court does not find it persuasive. While the court finds that plaintiff presented credible evidence that defendant's renovations substantially interfered with plaintiff's attempts to run its business, plaintiff has chosen the wrong legal basket into which to put its eggs.
In the second count, plaintiff alleges that defendant's actions breached his covenant to keep the premises fit for the purpose of running a paint store. The testimony established that throughout the period of renovation of the building, plaintiff, through the efforts of its employees, did run a paint store. While it is true that, on occasion, the lack of heat made mixing paint difficult, there was no evidence of what caused the problem with the heat or how long the problem lasted. Although the plaintiff's assistant store manager made notes of the problems as they arose, her notes first indicated heating problems in October, 1987 and she testified that she mainly complained about the heat to workers engaged in the renovation work. Thus, while the inability to mix paint may have interferred with the running of the store, plaintiff has not proved that the premises were unfit for that purpose.
In counts three and four, plaintiff alleges that defendant breached his contractual agreement to furnish water and heat to the premises and to keep the property in good repair. While plaintiff offered credible evidence that there were three days from March, 1987 through September, 1987 on which the bathrooms were inoperable because of problems with water supply. On two of those days, there was no electricity, March 31, and August 25. Plaintiff offered no evidence as to how long any of these problems lasted or what the cause was.
While paragraph 38 requires the landlord to keep and CT Page 100 maintain the roof in good repair, paragraph 23 of that same lease provides that the landlord "shall not be liable for any damage or injury to the demised premises, or to any property of the Tenant . . ., from water [or] rain . . . which may leak into . . . any part of said buildings of which the demised premises are part . . .
NOTWITHSTANDING ANY OF THE PROVISIONS HEREOF, the Landlord shall not be absolved or released from any liability for damage or injury sustained by the Tenant by reason of the Landlord's failure to comply with its duty to repair as set forth in Paragraph 38 of the Lease, provided that the Landlord shall have received at least ten (10) days prior notice from the Tenant of the need of a repair called for under Paragraph 38, to be made by the Landlord."
While plaintiff has proved that the roof, in February, 1987 was leaking and remained in disrepair for more than ten days after defendant was notified, all of the damage to plaintiff's property was caused by water or rain leaking from the roof. Paragraph 23 absolves the defendant of liability for such damage, Cf. Youngset, Inc. v. Five City Plaza, Inc.,156 Conn. 22, 25 (1968).
In the last count, plaintiff alleges that the defendant's renovation activities caused a failure to provide basic utilities in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. sec. 42-110a et. seq. (hereinafter CUTPA). As mentioned above, plaintiff has proved that, on occasion, following commencement of renovation, water service and electricity service to the premises were interrupted. However, plaintiff offered no evidence of the cause of such interruptions. Conn. Gen. Stat. sec. 42-110b prohibits engaging in unfair or deceptive acts in the conduct of any trade or commerce. Section 42-110g(a) provides a cause of action to any person who suffers "any ascertainable loss of money or property" as a result of the unfair act to recover actual damages. Had the plaintiff proved that the interruption of water or electric service were due to some act of defendant in violation of his contractual obligation to plaintiff, the court would find that an unfair trade practice. See, e.g., Fox v. Sousa, Docket No. 8205-098 New Haven Housing Sess. (March 30, 1984) N.H. #241. Plaintiff offered no such proof and for that reason, it cannot recover on the fifth count.
While the court can find that defendant's treatment of plaintiff as his tenant was cavalier, at best, and unresponsive to plaintiff's need to run its business in the midst of renovations, plaintiff has not proved the allegations of its complaint. Judgment will enter for defendant. CT Page 101
WENDY W. SUSCO JUDGE, SUPERIOR COURT