[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was made returnable to this court on August 28, 1990 and proceeded to trial commencing January 3, 1992. The plaintiff is seeking money damages for expenses incurred during and after the defendants' tenancy. The defendants are claiming a return of the security deposit, the breach of the covenant of quiet enjoyment and damages for personal property.
The central issue of this case is whether or not an oral lease to extend the tenancy incorporated all the terms and conditions of the written lease after it terminated. CT Page 1874
The court finds the following facts. The parties entered into a written lease agreement in connection with premises known as 1921 Fence Row Drive, Fairfield from February 1, 1989 to September 1, 1989. The premises were in a planned community of large-scale homes valued at approximately one million dollars. The home sat in 2-plus landscaped acres with an outdoor freeform pool and a Jacuzzi. At the time the lease was executed the defendants gave the plaintiff $7000 as security and "last month's rent."
The parties had no contractual disputes during the term of the written lease agreement. When the written lease terminated on September 1, 1989, the parties agreed that the defendants would continue to reside at the subject premises at the same monthly rental amount of $3500. The defendants told the plaintiff they needed an extension through June 1990 since they had three daughters whose school year they did not wish to interrupt. The plaintiff misunderstood this condition and did not consent to a term beyond March. The plaintiff believed that the oral lease included the terms and conditions of the written lease obligating the defendants to provide professional maintenance for the lawn and pool. The defendants did not share this view. Believing that the house would be turned over to him at the end of April, the plaintiff entered into a lease agreement with a third party to commence June 15, 1990 for the property where he was then living. He incurred realtors' commissions of $4080 upon entering this lease before realizing he would have to cancel it as he could not move back into the Fence Row property. He entered into this lease despite the fact that the defendants had paid April's rent and that he held what he believed to be the "last month's rent" which would apply to the succeeding month of May. The defendants then paid May's rent which the plaintiff accepted. The defendants failed to pay use and occupancy in June, July and August although they remained in the premises until the very last days of August.
The court further finds that when the plaintiff could not regain possession of the property in June he sent his brother and a small crew to do maintenance work and repairs on the premises. The crew harassed the occupants of the house. The tenants called the police on a few occasions. No arrests were made however.
Meanwhile, the defendants planned to purchase a home and therefore continued in residency at their convenience until the closing in August. Additionally, one of their daughters suffered a life-threatening illness necessitating surgery at the end of July.
On June 11, 1990, the plaintiff issued a notice to quit to the defendants directing them to vacate the premises on or before June 22, 1990. When the defendants did not vacate, he filed a summary process action. This action was withdrawn on September 6, after the defendants vacated at the end of August. CT Page 1875
The plaintiff claims an arrearage for the months of June, July and August and also seeks damages for the defendants' failure to properly maintain the pool, the lawn and the gardens. He also claims loss of personal property which was stored on the premises as well as other damages.
The defendants counterclaim by alleging that the work crew sent in June 1990 caused the breach of the covenant of quiet enjoyment; that they lost several thousands of dollars worth of art books in a "flood" and that they are entitled to double the value of their security as well as the interest on that security deposit which the plaintiff failed to return.
Section 47a-3d of the General Statutes provides that "(H)olding over by any lessee, after the expiration of the term of his lease, shall not be evidence of any agreement for a further lease. Parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only."
Both parties characterized the oral lease as a month-to-month tenancy. A month-to-month tenancy exists where there is no agreed time for termination. Conn. Gen. Stat. 47a-3b.
Both parties testified credibly as to their understanding of the facts. The court finds that each had different terms and different obligations in mind. The parties were not always consistent in their actions; the Meles paid for lawn care in the summer of 1990 even after they had been served with a notice to quit, while in June Mr. Clarke paid to open the pool despite their objection. Later in August the Meles paid to close the pool. They also believed they were entitled to 24-hour notice from the landlord before his work crews appeared because the "contract" so specified. That contract was the original lease.
In the absence of an agreement, the tenant shall pay the fair rental value for use and occupancy of the dwelling unit. Conn. Gen. Stat. section 47a-3c. Neither party suggested that $3500 was not an appropriate sum; therefore, the court finds that use and occupancy was $3500 per month and that the defendants failed to pay that amount for June, July and August.
The plaintiff is in possession of $7000 which was given at the beginning of the written lease term. The parties incorrectly characterized $3500 of that money as "last month's rent." However, Connecticut General Statutes section 47a-21 (10) defines "security deposit" as "any advance rental payment other than an advance payment for the first month's rent and a deposit for a key or any special equipment." There was no evidence presented to substantiate CT Page 1876 a finding that any money served as a deposit for a key or equipment. Therefore, the court finds that the entire sum is a security deposit upon which interest accrues. In any case where a tenant has been delinquent for more than 10 days in the payment of any monthly rent, he shall forfeit the interest which would otherwise be payable to him for that month. C.G.S. section 47a-21(i). The court further finds that interest through February 29, 1992, excluding the three months when no payments were made and interest did not accrue, is $857.52.
Since this was an oral month-to-month lease, the plaintiff's claim for reimbursement of monies spent on reopening, cleaning and closing the pool, and on lawn and garden care in June and the remaining summer months must be denied. Similarly, his claim for attorney's fees must fail. The written lease provided for reimbursement of attorney's fees; however, the term of that lease expired before the plaintiff's legal problems arose. Nor can he prevail on his claim for $150 late charges. There was no allegation that the Meles failed to pay their rent in a timely fashion under the written lease and through May. Additionally, the plaintiff claimed he paid for fuel which the defendants failed to purchase before vacating, for the repair of a manhole and for a water bill. Absent a showing by the preponderance of the evidence that the terms of the written lease continued as terms of the oral lease, the plaintiff cannot obtain the damages he seeks for these items.
The plaintiff alleged the conversion of certain items of personal property which were stored in the basement; these included a stereo, a 6-foot high plant, garden tools and a volleyball set. He also was uncertain as to whether or not he, and perhaps his wife, had removed any of the "junk" stored at the Fence Row house.
The Connecticut Supreme Court addressed the burden a party must meet when alleging damages. In Conaway v. Prestia, 191 Conn. 484,493-494, the Connecticut Supreme Court said "(I)t is axiomatic that a claimant seeking damages bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury."
 Although damages often are "not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier"; Johnson v. Flammia, (169 Conn. 491, 500); this situation does not invalidate a damage award as long as "the evidence afforded a basis for a reasonable estimate by the (trier) of that amount." Paiva v. Vanech Heights Construction Co., 159 Conn. 512
The evidence submitted by the plaintiff does not afford a basis for a reasonable estimate of damages with due regard to the value of lost items just before the time of loss. CT Page 1877
The defendants in their counterclaim allege that they suffered $12,000 damage in lost art books as a result of a flood in the basement where the books were stored. Their witness, Ms. Lubarsky, a realtor, testified that when they first saw the premises they saw a "damp basement" with evidence of water leakage on one of the basement walls. She stated that the plaintiff's realtor said that there was a problem with water but that things could be stored in another part of the basement. The defendants, who are art dealers, have a valuable collection of art books and catalogs essential to their work. Nevertheless, they stored cartons of these books on the floor of the cellar or on platforms approximately 10 inches off the floor in a section of the basement away from the water-marked wall.
The defendants travel abroad frequently in their line of work. While they were away on one of these trips, a "flood" occurred. When they returned Mrs. Mele testified that they had to wear boots to enter the basement days after the flood. They found some of their books destroyed, cartons disintegrating. Some books were salvaged. Mr. Mele attempted to prove the value of the lost books at trial, a value which approximated $4000.
The defendants cannot recover money damages for these books. They were put on notice that the basement had a leakage problem. Despite assurances to the contrary and the fact that the landlord stored some items in another part of the cellar on a platform, they should have known that a water problem could arise wherein their books would be damaged, if not by actual water then possibly by dampness. The court therefore awards them no money damages for their claim.
The defendants claimed that they lost income through their inability to use their home to entertain; they testified that a great deal of their business involves entertaining clients and presenting the art work in a home setting. However, they refused to produce financial records and ledgers which would tend to show that they had suffered a loss of income. They determined that such disclosure would violate their clients' right to privacy and confidentiality. The court finds their professional commitment laudable; unfortunately it does not provide a basis for awarding damages for lost income. They also alleged that they were unable to travel overseas due to the presence of the plaintiff's brother and his work crew, considering it necessary to remain at home with their children and housekeeper. However, they offered no evidence as to any plans they made for the months of June or July which they had to cancel or to the financial loss they sustained by not going abroad. They did not travel after their daughter became gravely ill at the end of July. Therefore, there is no basis upon which the court can award damages for lost business opportunities. CT Page 1878
In claiming damages for breach of the covenant of quiet enjoyment, the defendants pointed to the behavior of the landlord's brother and his work crew who were present at the premises for several days in June. Although there were problems between the workers and the members of the defendants' household, the crew was on the premises for the purposes of painting and performing maintenance tasks. There is a division of opinion among jurisdictions between those which hold that the covenant is breached only by the tenants' constructive or actual eviction from the premises and those which do not. In Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22 the court stated "The covenant of quiet enjoyment is that the grantee shall have legal quiet and peaceful possession and is broken only by an entry on and an expulsion from the land or from actual disturbance of possession by virtue of some paramount title or right. (internal citations omitted). A constructive eviction is said to arise when a landlord, while not actually depriving a tenant of possession, has done or suffered some act by which the premises are rendered untenantable." (at 25)
In this case the defendants did not leave the premises until late August and then only when they completed the purchase of their own home.
Section 47a-18a of the General Statutes provides a statutory covenant of quiet enjoyment which does not require that there be an actual or constructive eviction. When any claim made in a complaint is grounded on a statute, the statute must be specifically identified by its number. Connecticut Practice Book section 109A. The statute was not specifically identified in this complaint although it was cited in the trial brief; it, therefore, does not furnish a basis for recovery.
For the foregoing reasons, the court finds judgment for the plaintiff in the amount of $2642.48 calculated as follows: the defendants owe $10,500 for the months of June, July and August; this amount is offset by $7000 held by the plaintiff together with interest in the amount of $857.52.
LEHENY, J.