**In the Matter of Jacques GUAY, a/k/a Jack Guay, Debtor.**

**BAYBANK VALLEY TRUST COMPANY, Movant,**

**v.**

**Jacques GUAY, a/k/a Jack Guay, Springfield Institution for Savings, People's Bank, Neal Ossen, Trustee, Respondents.**

**Bankruptcy No. 2–91–01140.**

United States Bankruptcy Court, D. Connecticut.

March 12, 1992.

Douglas M. Evans, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for movant.

Neal Ossen, Ossen & Murphy, Hartford, Conn., for trustee.

PARTIAL RULING ON MOTION FOR RELIEF FROM STAY FILED BY BAYBANK VALLEY TRUST COMPANY

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

### ISSUE

The question presented at this time is the entitlement to rents collected by a bankruptcy trustee prior to a demand for such rents by the mortgagee and holder of a "Collateral Assignment of Leases and Rents" (the assignment). The claimants are Neal Ossen, Esq., trustee of the chapter 7 estate of Jacques Guay, the debtor, and BayBank Valley Trust Company (the Bank), the holder of the mortgage and the assignment. These parties have submitted the issue upon a stipulation of facts and briefs.

## II.

### BACKGROUND

The debtor, as owner of property known as 1395 John Fitch Boulevard, South Windsor, Connecticut (the property), on March 7, 1989 delivered to the Bank a mortgage of the property and the assignment as security for his $2,000,000 indebtedness to the Bank. The Bank promptly recorded both documents. Highlift, Inc. (Highlift) and Highlift Building Supply were then rent-paying tenants of the property. On October 11, 1990, Highlift filed a chapter 11

petition which this court, on June 5, 1991, converted to a case under chapter 7. John J. O'Neil, Esq., Highlift's appointed trustee, continued Highlift's occupancy of the property during the months of July, August and September, 1991.

On or about June 12, 1991, the court entered an order for relief in, and Neal Ossen, Esq. became trustee of, the debtor's estate, originally commenced by an involuntary petition filed on April 8, 1991. O'Neil, as trustee of the Highlift estate, on September 5, 1991, paid Ossen, as trustee of the debtor's estate, the sum of $36,000.00 representing the July–September monthly rental of $12,000.

The Bank, on September 10, 1991, through counsel, wrote to Ossen contending that all rents received by him "constitute cash collateral" and should be held "pending either order of the [Bankruptcy] Court or agreement of BayBank." The letter further stated that the Bank "will be seeking relief from the automatic stay to collect the subject rents in accordance with its collateral agreement."

The Bank, on September 27, 1991, filed a motion for relief from stay for the stated purpose of exercising its rights under the mortgage and the assignment, and to recover funds held by the debtor. The motion asserted that the debtor lacked any equity in the property and that the property was not necessary to an effective reorganization. The court, on November 8, 1991, by agreement of the parties, granted the Bank's motion, in part, and reserved its ruling on the issue of the Bank's claim to the three months' rents paid to Ossen.

The assignment, drafted, apparently, by the Bank, provides, *inter alia*, that "after default in the payment of any indebtedness" the Bank "at its option" may "either with or without taking possession of the Premises, in its own name, sue for or otherwise collect and receive all rents, issues and profit, including those past due and unpaid...."

## III.

## DISCUSSION

It is well settled that in Connecticut a mortgagor in possession of realty is entitled to the rents, with no duty to account to the mortgagee, unless and until the mortgagee asserts its right to collect the rents by taking an affirmative action to secure the rents from the mortgaged premises. A federal bankruptcy court, in general, follows state law on this issue. *See In re Coniam*, 9 B.R. 306 (Bankr.D.Conn. 1981). *See also In re Sansone*, 126 B.R. 16 (Bankr.D.Conn.1991) (Mortgagee-assignee's motion for relief from stay is appropriate affirmative action to enforce rights to rents when mortgage and collateral assignment perfected prepetition by recordation.).

The Bank, in its brief, acknowledges the validity of the *Coniam* and *Sansone* holdings, but, nevertheless, argues that the filing of a bankruptcy petition prohibits the debtor's estate from retaining any rents paid postpetition even if received prior to the filing of a relief from stay motion by the mortgagee-assignee. This contention is based on the definition of cash collateral contained in Code § 363(a) and the prohibition against use of cash collateral of § 363(c)(2)[1]. This contention, however, is contrary to the doctrine underlying the rulings in *Coniam* and *Sansone*, unsupported by any authority cited to the court, and found nonpersuasive. *See In re Raleigh/Spring Forest Apartments Assoc.*, 118 B.R. 42, 45 (Bankr.E.D.N.C.1990) (A mortgagee-assignee who has not taken an affirmative action prepetition to acquire rents has no right to rents "merely because a bankruptcy petition has been filed." Unenforced prepetition interest in rents "too remote to qualify as cash collateral."). *See also* Code § 552(b) (A security interest in property and its rents created by a prepetition agreement extends to such rents postpetition "to the extent permitted by such

---

**1.** *11 U.S.C. § 363. Use, sale, or lease of property.*
  (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate

have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

security agreement and by applicable non-bankruptcy law.").

## IV.

## CONCLUSION

The rents received by the trustee prior to the filing of the Bank's motion for relief from stay remain property of the estate and not subject to any valid claim by the Bank. It is

SO ORDERED.

. . . .

(c)(2) The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.