[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was brought by the plaintiff seeking damages from the defendant, tenants, on a written five year lease, commencing September 1, 1986 and ending August 31, 1991. The plaintiff claims the defendants owe $6,793.06, that sum represents three months of rent (June, July and August 1991) at the rate of $2,444.27 (or $7,332.81) plus CAM (Common Area Maintenance) charges in the amount of $1,414.42 (or $8,747.23), minus the security deposit of $1,954.17. The defendants answered and filed a special defense claiming that the defendants do not owe any sums because the plaintiff-landlord breached its obligations and was in default of the lease when the defendant stopped making rental payments.
At trial the plaintiff put on its case and then the defendant moved for judgment of dismissal on its behalf claiming that the plaintiff failed to prove that it was the successor in interest to Klein Jay, the lessor on the original agreement with the defendants, Gallant Gallant, and therefore was not the proper CT Page 9083 party plaintiff.
The court finds the following facts:
(1) On July 2, 1986, the defendant entered into a lease with Klein Jay Developers for occupancy of a portion of a building at 850 Grand Avenue. (Plaintiff's Exhibit B)
Paragraph 15(b) of the lease provides that the lessor may assign the lease without the lessee's consent. It also provides that the lessor agrees to give lessee written notice of any assignment within ten (10) days. Until such notice, lessee may continue to pay rent and all other charges to lessor. Lessee also acknowledged that it was lessor's intent to assign this lease to Citytrust.
(2) On October 31, 1986, by warranty deed, Klein and Jay transferred its interest in the premises to the plaintiff. (Plaintiff's Exhibit A)
(3) On October 31, 1986, the plaintiff assumed Klein and Jay's mortgage and obligations to Citytrust. (Defense Exhibit 6).
On October 31, 1986, the plaintiff granted to Citytrust (assignee of the City of New Haven) a modified and restated open-end "first" mortgage deed, security agreement and assignment of leases and rents to secure the $1,000,000 note and obligations assumed from Klein Jay. (Defense Exhibit 7)
Section 16 of that grant reads as follows:
 Section 16. Assignment of Leases and Rents. (A) The Indenture provides separately for the assignment to the Grantee ("Citytrust") of the City's right, title and interest in the agreement on the terms and conditions therein contained. As further security for the payment of the debt secured hereby, the Grantor ("Grand Avenue Associates") hereby assigns to the Grantee ("Citytrust") the leases, rents, issues and profits of the Mortgaged Property, including, without limitation, the Lease. The Grantor shall, except as otherwise provided in the Agreement of the Indenture, be entitled to CT Page 9084 collect and receive such leasehold payments (except security deposits), rents, issues and profits except upon the occurrence of an event of default hereunder, under the Agreement or under the Note. After an event of default, such leasehold payments, rents, issues and profits shall be collected by the Grantee and applied to the Grantor's obligations in accordance with the Agreement and Indenture
(4) On June 30, 1988, the plaintiff granted to Citytrust a "second" mortgage deed, security agreement and assignment of leases and rents for the premises to secure an $850,000 note with Citytrust. (Defense Exhibit 8) On June 30, 1988, the plaintiff was the record owner of the Mortgaged Premises.
In the "second" mortgage deed, the plaintiff grants to Citytrust the "Mortgaged Premises" plus "rents, issues and profits" (page 1, paragraph 2), plus all the right, title and interest of the plaintiff in "any and all present and future leases of space" and "all rents, issues, and profits payable under such leases" (page 2, paragraph 2(a), 2(c)). (Defense Exhibit 8)
Paragraph 3 of that grant on page 5 provides that the plaintiff agrees not to assign the rents or any part of the rents without first obtaining the written consent of Citytrust.
Paragraph 5 on page 5 provides that in any action to foreclose the mortgage, Citytrust is entitled to the appointment of a receiver and the plaintiff agrees to that. It also provides that in the absence of the appointment of such a receiver, whether or not one is requested, in the event of a default under this instrument Citytrust is appointed the plaintiff's attorney-in-fact to collect all rentals or other sums due to Citytrust in connection with the mortgaged premises.
(5) At some time in 1989 or 1990 Citytrust initiated a foreclosure of that "Second" mortgage. (Defense Exhibit 10)
(6) On June 29, 1990, Citytrust assigned without recourse all of its rights to the "Second" mortgage note, leases, rentals and all other documents relating to the 850 Grand Avenue note and second mortgage to BFG Associates. (Defense Exhibit 10, paragraphs 20-21; Defense Exhibit 5) CT Page 9085
(7) On July 1, 1992, a certificate of foreclosure notes that title to the premises become absolute in BFG Associates on June 25, 1992. (Defense Exhibit 5)
(8) The defendant vacated the premises in July 1991 and did not make rental payments for the months of June, July and August of 1991.
(9) This action was brought June 2, 1992, with a return date of July 7, 1992.
The question raised by the defendant's motion for dismissal is whether or not this plaintiff was the proper party to bring suit against this defendant on June 2, 1992, for unpaid rent and charges accruing in June, July and August of 1991, based on the above facts.
The threshold question to be decided is whether the plaintiff has standing to litigate this dispute with the defendants. "Standing is not a matter of constitutional law in Connecticut, but is rather a rule of judicial administration based upon the principle that the appropriate parties to litigate a dispute are those who are injured or about to be injured." Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 65, 441 A.2d 68, (1981).
 Standing concerns the legal right of an individual to set the machinery of the courts in operation . . . . (citation omitted) [A] person is not `entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity.' (citation omitted).
Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545-46 (1980).
 The `fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes, to have adjudicated.' Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed 947 (1968).
Hartford Kosher Caterers, Inc v. Gazda, 165 Conn. 478, 485,338 A.2d 497 (1973). Connecticut Assoc. of Health Care Facilities, CT Page 9086 Inc. v. Worrell, 199 Conn. 609, 612, 508 A.2d 20 (1986).
 When standing is put in issue, the question is whether the person whose standing is challenged is the proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded. (citation omitted)
Connecticut Assn. of Boards of Education, Inc. v. Shedd, 197 Conn. 554,558, 499 A.2d 797
The plaintiff contends that the assignment of the mortgage by Citytrust to BFG did not operate to extinguish the rights of the plaintiff to continue to collect the rents on the leased property. The plaintiff also contends the assignment of rents and leases pursuant to the commercial lease is conditional and there must be some affirmative action taken by the mortgagee to gain control of the property, which action can only by taken after a default by the mortgagor under the terms of the instrument. The plaintiff contends that that affirmative action was not taken. The defendant contends that by virtue of the assignment of leases by Citytrust to BFG Associates on June 29, 1990, the holder of the lease at that time was BFG Associates, not the plaintiff. The defendant also contends that the initiation of the foreclosure action by Citytrust was the affirmative act necessary to secure the rents for Citytrust from the mortgaged premises.
Since Connecticut is a "title theory" state, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, known as equity of redemption:
 The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. General Statutes 47-36h; Stoneybrook, Inc., 149 Conn. 492, 495-96, 181 A.2d 601, appeal dismissed and cert. denied, 371 U.S. 185, 83 S.Ct. 265, 9 L.Ed.2d 227 (1962); Brand v. Woolson, 120 Conn. 211, 180 A. 293 (1935). Under our law, an action for strict foreclosure is brought by a mortgagee who, CT Page 9087 holding legal title, seeks not to enforce a forfeiture but rather to foreclose an equity of redemption unless the mortgagor satisfies the debt on or before his law day. Cook v. Bartholomew, 60 Conn. 24, 27, 22 A. 444 (1891).
Barclays Bank of N.Y. v. Ivler, 20 Conn. App. 163, 166 (1989).
The plaintiff granted both a first and a second mortgage deed to Citytrust. The first mortgage deed has the conditional assignment language frequently cited by the plaintiff. The second mortgage deed provides that the plaintiff will not assign the rents without Citytrust's consent and will only collect rents under certain conditions. It also provides that "all rents and profits of said Mortgaged Premises, are hereby assigned to the Grantee." It also provides that once there is a foreclosure action, with or without a receiver appointed, Citytrust becomes the plaintiff's attorney-in-fact to collect all rentals due to Citytrust. Citytrust then sought to foreclose the second mortgage deed and note in 1989 or 1990 based on the default of the plaintiff on one or more of its obligations to Citytrust. Under the terms of the second mortgagee deed, Citytrust, on the event of the foreclosure action, becomes the plaintiff's attorney-in-fact for the collection of rents for Citytrust unless a receiver was appointed. Either the receiver or the attorney-in-fact could bring any action for rent. At that point in time, Citytrust could have become responsible for collecting rents.
 It is well settled that in Connecticut a mortgagor in possession of realty is entitled to the rents, with no duty to account to the mortgagee, unless and until the mortgagee asserts its right to collect the rents by taking an affirmative action to secure the rents from the mortgaged premises. A federal bankruptcy court, in general, follows state law on this issue. See In re Coniam, 126 B.R. 16
(Bankr. D.Conn. 1991).
Matter of Guay, 138 B.R. 3, 4 (Bkrtcy. D. Conn. 1992).
The defendant argues that the affirmative action was initiated by Citytrust's foreclosure action. However, although the foreclosure action was commenced in 1989 or 1990, the defendant has submitted no evidence indicating that is was affirmatively instructed CT Page 9088 to pay its rent to Citytrust, as assignee or attorney-in-fact or in any other capacity. On the contrary, the evidence presented indicates that the defendant continued to pay its rent, without any directions to the contrary, to the plaintiff until April, 1991, under the terms of the lease. The defendant's argument that the initiation of the foreclosure action itself is the affirmative act necessary to secure in the mortgagee the right to collect rent is rebutted by the receiver and attorney-in-fact, language of the second mortgage deed. If the parties to the mortgage deed had contemplated that the foreclosure action was sufficient to effectuate the assignment of rents, then the attorney-in-fact and receivership language would have been superfluous.
Since Citytrust took no affirmative act to collect the rents from the defendant, the mortgagor in possession, Grand Avenue Associates, was entitled to the rents. See Matter of Guay, supra. Then, once Citytrust assigned on June 29, 1990 all its rights in the second mortgage, note, leases, rentals and other documents to BFG Associates, BFG Associates acquired all the rights and obligations of the assignor. Upon assignment, the assignee steps into the shoes of the assignor. See Second Nat. Bank of New Haven v. Dyer, 121 Conn. 263 (1936) (assignment of mortgage passes to assignee all title which mortgagee had). Thereafter, BFG Associates could have become the plaintiff's attorney-in-fact or obtained a receiver for the collection of rents for BFG Associates until plaintiff's equity of redemption was ultimately foreclosed on by Citytrust and BFG Associates and title to said premises became absolute in BFG Associates on June 25, 1992. At that point in time, any rights the plaintiff may have had to collect rents could have been extinguished by BFG Associates. Here again, there was no evidence presented that BFG Associates obtained a receiver of rents, or became an attorney-in-fact as provided under the second mortgage. Also, according to the lease, the tenant was to pay the rent to the mortgagor-plaintiff until it received written notice of an assignment to the contrary.
Therefore, since Grand Avenue Associates had the right to the rent, it has the right to sue to collect the rent due and owing. Furthermore, since the defendant tenant was not a party to the mortgage deed (although it was a party to the foreclosure action), there was no privity of contract between Citytrust and the defendants. Therefore, the defendant's motion for judgment of dismissal is denied. CT Page 9089
At trial, the court heard testimony from Mr. Gudjohnsen, managing partner of the plaintiff, and also partner of BFG Associates; Mr. Michael MacDonald, property Manager for Connecticut Property Inc., the managing agent for the property; John Tischio, real estate broker for the Beazley Co.; Edward Gallant, general partner of Gallant and Gallant; Mr. Phillips, a building inspector for the City of New Haven; and Mrs. Lucibello, legal assistant at Gallant and Gallant.
The defendants raised one defense to the case. They claimed that the plaintiff breached the lease and interfered with their "quiet enjoyment" of the leased premises by not installing a "security system" as stated in Section 7(d) of the lease. On examination the defendant, Edward Gallant, testified that he and his partners negotiated the lease with the landlord and that the negotiations took place over an extended period of time. He admitted that there were many changes in the lease during the negotiations and that the final lease incorporated many specifics as to work and improvements to the leased premises by the landlord. He also admitted on cross examination that he and the landlord at the time of the negotiation of the lease did not agree as to the specific type of "security system" to install, and that the tenant moved into the leased premises and occupied the same and paid rent on the same for over four years without the installation of a "security system". Mr. MacDonald and Mr. Gudjohnsen testified that they had had several discussions with Mr. Gallant, which included discussions concerning the "security system".
Mr. Gallant testified that the firm began the negotiations for the premises to be part of the rejuvenation of the Grand Avenue area. He testified that provision of the "security system" language in Section 7(d) of the lease was of "extreme concern to them". He also testified that the "security system" was a special point that he and his former partner, Peter Culver, raised early on in the negotiations. He testified to numerous problems at the premises — elevators not working, roof leaks, construction delays — during the terms of the lease. He testified to disputes over the common area maintenance charges, heating and refrigeration. He testified that no security system was ever installed except for locks on front and back doors and office doors. He testified that at one point a "start" of a security system was undertaken for fire and to ascertain who was coming into the premises. It was never completed. He testified he believed they were the first tenants to move in. He testified that the front main door was always locked so the only way his clients could enter the building was through CT Page 9090 the back doors near the parking lot. That door was left open so the clients and patrons of the businesses on the premises could enter the premises. He said some other tenants ultimately installed their own private security systems. The provisions of the leases of those tenants were not put into evidence. He testified he approached Steve Sion, who had taken over from Klein Jay, about the security system and Mr. Sion said "what do you want us to do that wouldn't cost money?". There was testimony of numerous intruders and vagrants in the building, strangers sleeping on the landings because the main doors were left open at night by the cleaning crews or other businesses. There were vagrants in the parking lot.
Mrs. Lucibello testified to vagrants on the various floors and in the parking lot. She testified to a theft from the defendant's office because the back door was left unlocked. She testified to a dead body in the parking lot. Mr. Gallant testified to a break-in involving their microwave, phone equipment, storage area and one boutique robbery. He testified that he mentioned the security issue with Mr. Gudjohnsen and Mr. Sion on numerous occasions. He testified that the firm "went as long as they could". He testified that they discussed "sanitrol", and a "code system" with the plaintiff or its designated representatives. He testified he didn't care what kind of system was installed just so that one was installed.
Gallant testified that the October 23, 1990, letter (Defense Exhibit 3) invoking their rights under paragraph 23(b) of the lease was precipitated by Mr. Sion's statement that he would not fix the security system problem or install a system. Mr. Gallant testified that they intended to move out after that Oct. 23, 1990 letter of notice. On November 2, 1990, the plaintiffs responded by stating that they believed the current security arrangement was proper. (Plaintiff's Exhibit I.) However, the firm provided the plaintiff with more time to correct the problem and they continued to pay rent. In February 1991, after the third floor break-in, a dead body was found under a car in the parking lot. Then, on April 29, 1991, the defendant mailed its "notice of termination" under paragraph 23(b) of the lease, to the plaintiff. It stated the firm would vacate on June 30, 1991. (Defense Exhibit 1). The defendant again allowed the plaintiff a reasonable period of time to rectify the security system after the Feb., 1991 incident.
Paragraph 23 of the lease reads as follows: CT Page 9091
23. Quiet Enjoyment.
 (a) Upon compliance with this Lease, Lessee shall quietly have and enjoy the Premises during the term of this Lease.
 (b) To the extent that Lessee's quiet enjoyment of the Premises is prevented by the conduct of the Lessor or any other tenant, then Lessee may give written notice thereof to Lessor and Lessor shall have thirty (30) days to take all reasonable steps to provide quiet enjoyment to Lessee. If at the end of this thirty (30) day period, Lessor has not provided quiet enjoyment to Lessee, Lessee may terminate this Lease by written notice to Lessor, the date of termination to be be not less than sixty (60) days after the notice of termination.
 The covenant of quiet enjoyment is that the grantee shall have legal quiet and peaceful possession and is broken only by an entry on and an expulsion from the land or from actual disturbance of possession by virtue of some paramount title or right. 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, 97, 98. A constructive eviction is said to arise when a landlord, while non actually depriving a tenant of possession, has done or suffered some act by which the premises are rendered untenantable. Cerruti v. Burdick, 130 Conn. 284, 286-87. The defendants did not have the right to quit possession unless some act of the plaintiff rendered the premises uninhabitable, resulting in a constructive eviction. Weiner v. Frauenglass, 10 Conn. Sup. 355, 357. A disturbance or entry by a mere intruder is not sufficient to constitute a breach of a covenant of quiet enjoyment. 21 C.J.S., Covenants, 108. The obligation of the landlord to protect his tenant relative to the tenant's right to quiet and peaceful possession and enjoyment extends only to evictions and disturbances caused by himself CT Page 9092 or by someone with a paramount title. (emphasis added).
Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22, 25 (1976).
The court in Johnson v. Fuller, 190 Conn. 552, 556-557 (1983) cites with approval the standard used in Thomas v. Roper, 162 Conn. 343,347 (197) for "untenantability" as follows:
 "[w]hether the premises are untenantable is a question of fact, for the trier, to be decided in each case after a careful consideration of `the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed.' . . . that factual determination will not be disturbed by this court unless the conclusion is such that it could not reasonably be reached by the trier." (Citations omitted)
"[A] lease is a contract and the `rules applying to contracts generally with respect to breach . . . apply to leases as well as contracts.' It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract." Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,18 Conn. App. 384, 391 (1989); see also, Batter Building Materials Co. v. Kirschner, 142 Conn. 1, 10 (1954) ("[R]epudiation or total breach of contract . . . may relieve the injured party from further fulfillment of his contractual obligations").
 "However, under generally accepted principles of contract law, if there is a substantial breach of a material mutually dependent covenant in a bilateral contract, the injured party is excused from further performance." Ringwood Associates v. Jack's of Route 23, 379 A.2d 508, 514 (NJ. Super Ct. 1977) (citations omitted).
See extensive discussion of the progression from property law rules to contract rules in the application to damages for breach of CT Page 9093 commercial leases in Dornfeld v. Hom, SPH9101-58760 H#949 (1991). ("In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . ." id at 8)
In this case, the court finds that the plaintiff prevented the defendant's quiet enjoyment of the premises by failing to install a security system as required by the lease and by unequivocally repudiating the lease by their actions and by indicating that the locks on the doors was the proper security system contemplated in the lease. (plaintiff's Exhibit I.)
While the plaintiff rejects certain parts of this version of events, the court is satisfied that no "security system" was ever installed and that the lease provided for one. The court also credits the testimony of the defendants on the importance of the "security system" during the entire tenancy.
In the court's review of the case law involving the defendant's "right to quiet enjoyment", the court finds that the holding of the case of Net Realty Holding Trust v. Nelson, supra at 26 (1976) is distinguishable. In that case, the lease between the parties did not provide the "positive steps" the landlord was to provide to insure quiet enjoyment. In this case, the lease required a "security system," to be installed by the plaintiff. In this case, the Landlord's duty was clear and the breach has been established. Had the plaintiff provided the security system, the defendant's claims regarding the intruders would have been to no avail. But, since the plaintiff has not fulfilled his obligations, the defendant is relieved of his obligations under the lease. See also Mercede Plaza Enterprises v. Copeland Economic Group, CVN08509-549, SNBR #235, p. 4 (1986). In that case, the court noted that since the defendant had not alleged any duty to provide security, the defendant had not alleged sufficient facts to constitute a claim of breach of the covenant of quiet enjoyment, citing Net Realty, supra at 35-26. This is clearly not a breach by an innocent landlord, as contemplated in Net Realty.
Accordingly, judgment for the defendant.
Clarine Nardi Riddle, Judge CT Page 9094