[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE' WHETHER COURT SHOULD GRANT MOTIONS TO STRIKECOUNTERCLAIMS WHICH ALLEGE DUTY OF LANDLORD TO PROTECT AGAINST ALLEGEDILLEGAL ACTIVITY OF DRUG DEALERS AND OTHER THIRD PERSONS AT OR NEAR THELEASED PREMISES
On July 14, 1995, Geraldine Frankel, (hereafter landlord) filed a revised complaint against her former tenants, Leroy and Dorothy Gomes (hereafter tenants). The following are the allegations in the complaint. The parties entered into a written residential rental agreement[1] for a term of one year. The tenant vacated the premises six months prior to the expiration of the lease and, thereafter, failed to tender the remaining rent payments. The complaint seeks damages for nonpayment of rent.
On September 25, 1995, the tenants filed an amended counterclaim (first amended counterclaim). The first count alleges that the landlord breached the implied covenants of quiet enjoyment and good faith and fair dealing by failing to post signs or to install a locked gate or other device to prevent prostitutes, drug dealers and other unsavory persons from using the premises to commit illegal acts. The second count alleges that the landlord engaged in an unfair and deceptive trade practice, pursuant to CUTPA, by tolerating prostitution on the premises and by neglecting to take reasonable steps to abate illegal activity, notwithstanding the tenant's repeated complaints.
On October 2, 1995, the landlord filed a motion to strike the first amended counterclaim. The landlord filed a memorandum of law in support arguing that "[t]he covenant of quiet enjoyment extends to eviction and disturbances caused by a landlord or by someone with paramount title." The landlord contends that the tenants have not alleged that she or someone with a superior title breached a covenant of quiet enjoyment. The landlord relies upon the case ofNet Realty Holding Trust v. Nelson, supra, 33 Conn. Sup. 22 (1976) as support for her position.
On October 18, 1995 — before the court ruled on the landlord's motion to strike the first amended counterclaim — the tenant filed a second amended counterclaim.
Thereafter, on October 20, 1995, the court granted the landlord's motion to strike the first amended counterclaim. The court's ruling did not affect the second amended counterclaim. CT Page 4389
On October 25, 1995, the landlord filed a motion to strike the second amended counterclaim. On October 31, 1995, the tenants filed their objection.
On January 5, 1996, the court granted the landlord's motion to strike the second amended counterclaim on the ground that it repeated the allegations of the first amended counterclaim which the court had previously stricken.
Thereafter, the court agreed to reconsider both motions to strike, on the merits, and heard oral argument thereon on April 2, 1996. The court shall address the substantive issues raised in the motions to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts alleged in the complaint most favorably to the landlord. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) Novametrix Medical Systems Inc.v. BOC Group. Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). "A motion to strike . . . may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano'sAuto Service, 4 Conn. App. 495, 496, 495 A.2d 286 (1985).
I. MOTION TO STRIKE FIRST AMENDED COMPLAINT
 A. Count One
 1. Breach of Implied Covenant of Quiet Enjoyment
The first count of the first amended counterclaim alleges breach of the implied covenant of quiet enjoyment because the landlord, inter alia, failed to post signs or install a locked gate or other device to prevent prostitutes, drug dealers and other unsavory persons from using the premises to commit illegal acts. The landlord moves to strike the first count of the first amended counterclaim on the ground that her ". . . obligation . . . to protect [her] tenants relative to [their] right to quiet enjoyment extends only to eviction and disturbances caused by [her]self or by someone with a superior title." Net Realty Holding Trust v. Nelson,
CT Page 439033 Conn. Sup. 22 (1976). The landlord argues that since the tenants have not alleged that the disturbances were or are caused by her or by someone with superior title, she cannot be held legally accountable for the disturbances of which the tenants complain.
This court notes that the Appellate Court has had occasion to address some of the issues raised by the tenants.
 "Under landlord-tenant law, [it is] the right of a tenant to enforce a covenant of quiet enjoyment . . . . The covenant assures that the lessee shall have legal quiet and peaceable possession and enjoyment of the leased premises, as far as regards the lessor, or anyone lawfully claiming through or under him, or anyone asserting a title to the leased premises superior and paramount to that of the lessor. . . . The covenant of quiet enjoyment is the obligation of the landlord `to protect his tenant relative to the tenant's right to quiet and peaceful possession and enjoyment extends only to evictions and disturbances caused by himself or by someone with a paramount title. . . .' The covenant of quiet enjoyment operates as a shield for the lessee in protecting his possessory interests in his leasehold." (Brackets omitted; citations omitted; internal quotation marks omitted.)
 Sullivan v. Nameaug Walk-in Medical Center. P.C., 35 Conn. App. 185, 190, 644 A.2d 398, appeal dismissed as improvidently granted, 233 Conn. 213, 657 A.2d 639 (1994).
A landlord can breach the covenant of quiet enjoyment through an actual or a constructive eviction of the tenant. Net RealtyHolding Trust v. Nelson, supra, 33 Conn. Sup. 25. "A constructive eviction is said to arise when a landlord, while not actually depriving a tenant of possession, has done or suffered some act by which the premises are rendered untenantable." Id.
 Except as to acts of one deriving title from the landlord or of one who has a title paramount to that of the landlord, a tenant cannot assert the act of one other than the landlord as an eviction, unless he can show that such act was authorized by the landlord either expressly or impliedly. The [landlord] can be held liable only for his own acts, the acts of third persons acting under his sanction or authority, and CT Page 4391 the acts of third persons acting under a paramount right-that is, he is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from. No obligation for the protection of the tenant against the wrongful intrusion of a third person rests upon the landlord merely because of the relationship of landlord and tenant. Eviction of a tenant by a wrongdoer or trespasser, without title or authority, does not affect the rights and duties of the landlord and tenant to each other.
49 Am.Jur.2d, Landlord and Tenant, § 318.
The court finds that the first count of the first amended counterclaim does not allege that the landlord, or someone with paramount title, actually interfered with the tenant's right to quiet enjoyment of the premises. Furthermore there is no allegation of a wrongful eviction. The court shall now determine whether the counterclaim alleges a constructive eviction.
The first count of the first amended counterclaim alleges that the landlord breached the covenant of quiet enjoyment by permitting drug dealers and prostitutes to commit illegal acts on the premises. It does not allege that these intrusions operated as a constructive eviction, nor that they rendered the premises untenantable.
The case of Net Realty Holding Trust v. Nelson, supra
illuminates the landscape which the tenants invite the court to travel. In Net Realty Holding Trust supra, a tenant operated a miniature golf course in an enclosed mall in Meriden, Connecticut, and complained to the landlord that trespassers were loitering in and about their premises. Eventually a trespasser assaulted an employee of the tenant and stole the tenant's cash box. As a result the tenant abandoned the premises and stopped paying rent. The landlord brought a summary process action to recover the rent. The tenant asserted a special defense of breach of the covenant of quiet enjoyment.
The court emphasized that "the obligation of the landlord to protect his tenant relative to the tenant's right to quiet and peaceful possession and enjoyment extends only to evictions and disturbances caused by himself or by someone with a paramount title. Thus a hindrance of that enjoyment by a mere intruder is no ground of action for breach of covenant of quiet enjoyment. . . . CT Page 4392 The evidence in this case is clear that any interference with the defendant's tenancy was not done with the plaintiff's [landlord's] knowledge, permission or direction. Any relationship between the plaintiff and the acts of interference complained of was too attenuated for it [the landlord] to be held responsible for the disturbance of the defendant's tenancy." (Citation omitted; emphasis added.) Id. The court concluded that there was no breach of the covenant of quiet enjoyment.
In this case the first count of the first amended counterclaim alleges that drug dealers and prostitutes disturbed the tenant's quiet enjoyment; however, there is no allegation that the disturbances were caused by the landlord or someone with paramount title. In addition, there is no allegation that the intruders were acting under the landlord's sanction or authority.
In Net Realty Holding Trust, supra, the court suggested, in dicta, that a landlord's obligation to provide quiet enjoyment might be extended if the landlord is required to take "positive steps" to assure the tenant's quiet enjoyment. The court did not indicate what circumstances might obligate a landlord to take "positive steps" but the court in Grand Avenue Associates v.Gallant Gallant, [Superior Court, judicial district of New Haven/Housing Session, Docket No. 5223 (Oct. 14, 1993) (Riddle, J.,)] held that a lease provision provided such an obligation.
The tenant in the case of Grand Avenue Associates, supra,
abandoned the premises after the landlord failed to provide a security system as required by the lease. The tenant testified that security was an important issue in the negotiation of the lease. The court determined that the security system provision obligated the landlord to take "positive steps" to provide for the tenant's safety. The court determined that the failure of the landlord to provide a security system breached the tenant's quiet enjoyment. The court in Grand Avenue Associates distinguished Net RealtyHolding Trust by noting that "the lease [in Net Realty Holding Trust] . . . did not provide the `positive steps' the landlord was to provide to insure quiet enjoyment. In this case the lease required a security system' to be installed by the landlord. In this case, the landlord's duty was clear and the breach has been established. Had the landlord provided the security system, the defendant's claims regarding the intruders would have been to no avail." Id.
The present action is distinguishable from Grand AvenueCT Page 4393Associates. The first count of the first amended counterclaim does not allege that the landlord had an affirmative duty to take any "positive steps" to keep intruders off the premises. The counterclaim does not allege that the parties discussed the issue of security while negotiating the lease and there is no provision in the lease that requires the landlord to take any "positive steps" to keep intruders off the premises.
Argument is made that the tenant's claims are supported by the case of Tang v. Balkan, Superior Court, judicial district of New Britain/Housing Session, Docket No. 1251 (May 9, 1994) (Holzberg, J.), In the case of Tang v. Balkan the plaintiff rented a room in the defendant's house and paid the rent in advance. Shortly after moving in, the defendant's dog attacked the plaintiff. As a result, the plaintiff was apprehensive about living in the defendant's home and vacated the premises. The plaintiff brought an action seeking the return of the advanced rent payments. The court found in favor of the plaintiff reasoning that the tenant was constructively evicted because the presence of the dog made the premises untenantable under the circumstances.
The present action is distinguishable from Tang, supra, because the first amended counterclaim does not allege constructive eviction, untenantability, nor that an agent or instrumentality of the landlord harmed the tenants.
 2. Breach of the Implied Covenant of Good Faith and Fair Dealing
"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." (Internal quotation marks omitted.) Warner v. Konover, 210 Conn. 150,154, 553 A.2d 1138 (1989). "An implied covenant of good faith and fair dealing is essentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." (Internal quotation marks omitted.) Elis v. Meyer, 213 Conn. 29, 35-36, 556 A.2d 422 (1989). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . [However,] [t]he covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." Neiditz v. Housing Authority,43 Conn. Sup. 283, 294, 654 A.2d 812, aff'd, 231 Conn. 598, CT Page 4394651 A.2d 1295 (1995).
This court finds that the first count of the first amended counterclaim does not allege a cause of action for breach of the implied covenant of good faith and fair dealing. The counterclaim does not allege the existence of an agreement (such as a provision in the rental agreement) whereby the landlord committed to take affirmative steps to keep intruders off the premises. The court finds that the principle of good faith and fair dealing cannot be used to create an implied duty on the part of the landlord to take affirmative steps not required by the contract.
B. Second Count- CUTPA
The second count of the first amended counterclaim alleges that the landlords' failure to take measures to safeguard the leased premises from the allegedly illegal acts of prostitutes and other unsavory third persons — although the tenants informed the landlords of and requested protection against such illegal acts — constitutes an unfair and deceptive trade practice under the Connecticut Unfair Trade Practices Act (CUTPA). The landlords have moved to strike this counterclaim.
CUTPA provides, in pertinent part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b(a). The Connecticut Supreme Court has specifically held that leasing apartments falls within the purview of CUTPA. Conaway v. Prestia, 191 Conn. 484, 491, 464 A.2d 847
(1983). "It is well settled that in determining whether a practice violates CUTPA we [the Connecticut Supreme Court] have adopted the criteria set out in the cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise- whether, in other words, it is in at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen." (Brackets omitted; internal quotation marks omitted.) CheshireMortgage Services, Inc. v. Montes, 223 Conn. 80, 105-06,612 A.2d 1130 (1992).
The Supreme Court views the scope of CUTPA claims in landlord-tenant CT Page 4395 transactions as limited to practices that offend public policy. InConaway v. Prestia, supra, 191 Conn. 484, the court held that a landlord that accepts rent before obtaining a certificate of occupancy — where required — breaches the public policy embodied in General Statutes §§ 47a-57 and 47a-5, of ". . . insuring minimum standards of housing safety and habitability." Id. at 493. It is submitted that a CUTPA claim must allege a violation of a specific statutory provision in order to allege an unfair practice in a landlord-tenant transaction.
This court finds that the second count of the first amended counterclaim does not allege that the landlords' failure to keep intruders off the premises offends public policy as embodied in a specific regulatory statute, or as recognized in the common law, or as embraced within some other established concept of fairness.
II. SECOND AMENDED COUNTERCLAIM
 A. First Count
The first count of the second amended counterclaim alleges constructive eviction and breach of the implied covenant of good faith and fair dealing because the landlord failed, inter alia, to post signs or install a locked gate or other device to prevent prostitutes, drug sellers and other unsavory persons from using the premises to commit illegal acts.
The tenant argues that the foregoing allegations constitute a cause of action for constructive eviction based upon the landlord's breach of the implied covenants of quiet enjoyment and good faith and fair dealing.
This court finds that the counterclaim, as amended, does not allege any additional facts that would distinguish the present case from the considerations articulated in Net Realty Associatessupra. As explained in Part I, a landlord is responsible for disturbances caused by an intruder only if the landlord maintains a relationship with the intruders such that the landlord should be responsible for their disturbances or if the landlord has an affirmative duty to take "positive steps" to keep intruders off the premises.
B. Second Count — CUTPA
The second count, alleging a CUTPA violation, incorporates the CT Page 4396 allegations of the second amended counterclaim, and asserts that those allegations constitute a violation of the Connecticut Unfair Trade Practices Act. The landlord disagrees and, for the reasons set out in Part I B of this opinion, so does this court.
Upon the foregoing reasons and authorities, the defendants' Motions to Strike are granted.