Camp *v.* Scott.

## AUGUSTUS P. P. CAMP *vs.* WALTER SCOTT.

A demand for rent accruing after a default, known to the lessor, which might work a forfeiture, is a waiver of the right to enter for the default.

Under a lease for a term of years the rent was payable quarterly on the first days of April, July, October and January, and if not paid within thirty days after due the lessor was to have the right to enter and terminate the lease. The quarter's rent due April 1st was not paid, the lessee claiming the right to set off against it a larger sum paid for repairs. On the 26th of July the lessor demanded the rent due July 1st, offering to allow the lessee the April rent in full of the repairs; but the lessee refused to make this settlement and the lessor thereupon refused to allow anything for the repairs and declared that the lease was forfeited and that he should take measures to eject the lessee. Held that, as the demand was for the July rent, as to which the thirty days had not expired, the lessor had waived his right to enter for the non-payment of the April rent.

And to take advantage of the non-payment of the April rent the lessor was bound to demand it on the premises on the last of the thirty days allowed for its payment, and upon the lessee's neglect to pay, to enter for the default or or in some other positive manner assert the forfeiture.

The lease contained the following waiver of demand and re-entry:—"It being understood that no demand for the rent and no re-entry for condition broken as at common law shall be necessary to enable the lessor to recover such possession, pursuant to the statute relating to summary process, but that all right to any such demand or any such re-entry is hereby expressly waived." Held that the final clause was not to be regarded as a general waiver of demand and re-entry, but as such waiver only for the purposes of a proceeding of summary process.

A provision in a lease for a forfeiture will be so construed as to prevent rather than aid the forfeiture, where the language admits of such a construction.

The lessee had covenanted for himself and his heirs to pay the rent during the term. He died, and his son and heir entered into possession and for several months continued to pay the rent. Held that this was not enough to make the heir liable upon the covenant of the ancestor.

A lessor can not maintain a suit against a sub-tenant upon the lessee's covenant to pay rent.

The defendant after the death of the original lessee had, upon going into possession, signed an agreement by which "for value received" he guaranteed the payment of the rent. Held—1st. That this was a sufficient statement of a consideration, the defendant having the right to rebut the presumption which it raised.—2d. That while the defendant did not show any want of consideration, nor explain the arrangement under which he entered into possession, the court could see that there might be in the facts a sufficient consideration.

But held that the declaration was insufficient in not averring that the rent had not been paid by the original lessee or his executor.

Where a case is reserved for advice, not simply upon a finding of facts but upon the entire record, if the court discovers that the declaration is so insufficient

that the judgment required by the facts would be a nullity, such a judgment ought not to be advised. If however the facts show a good cause of action, and the declaration though defective is amendable, the court will ordinarily advise judgment contingently upon such amendment.

COVENANT and assumpsit; brought to the Superior Court in New Haven County. Facts found and the case reserved for advice. The facts are fully stated in the opinion.

*G. E. Terry*, with whom was *S. W. Kellogg*, for the plaintiff.

*J. W. Webster* and *J. O'Neill*, for the defendant.

LOOMIS, J. This action was brought to recover rent claimed to be due from the defendant to the plaintiff by virtue of the following facts:

One Julius Hotchkiss by written instrument in due form leased certain premises to the plaintiff for ten years from the 1st of January, 1868, with covenants (among other things) to pay the rent quarterly on the first days of April, July, October, and January in each year, with a provision that the lease should terminate if the rent should remain unpaid thirty days after it was due, and giving the lessor the right to re-enter in the usual form. The lease also gave the lessee permission to underlet.

Afterwards the plaintiff leased a portion of the premises to Joseph Scott, the father of the defendant, for the period of five years and two months, (being the remainder of the plaintiff's term,) who occupied and paid the rent to the plaintiff till his death, which occurred on the 29th of January, 1877. After the death of his father, Walter Scott, the defendant, signed the following writing, at the bottom of the lease from the plaintiff to his father:—

"For and in consideration of the letting of the premises above described, and for value received, I guarantee the payment of the rent and the performance of the covenants in the above agreements mentioned to be paid and performed by said lessee, without requiring any notice of non-payment or non-performance, or proof of notice or demand being made

whereby to charge rent therefor, from the first day of Februrary, A. D., 1877, up to January 1, 1878. Waterbury, March 5th, 1878. Walter Scott."

Walter Scott, the defendant, who it is found succeeded to the business of his father, which had been carried on upon the leased premises, entered into possession February 1st, 1877, and occupied till January 1st, 1878, paying to the plaintiff the rent up to August 1st, 1877.

Soon after the rent from the plantiff to Hotchkiss became due for the quarter ending April 1st, 1877, he made a draft on Camp for the amount, which draft was not honored by Camp, and afterwards Hotchkiss in person demanded the rent for that quarter, which the plaintiff refused to pay, claiming that Hotchkiss owed him a greater amount for repairs. Nothing further took place between the parties till July 26th, 1877, when Hotchkiss called and demanded the rent for the quarter ending July 1st, offering to turn one full quarter's rent towards the repairs, but the plaintiff refused to accept the proposition, claiming that the repairs amounted to more than all the rent then due. Hotchkiss thereupon refused to allow any part of the plaintiff's bill for repairs, and claimed that Camp by so refusing to pay rent had forfeited his right to the possession of the leased premises, and declared he should take means to eject him. On the next day Hotchkiss notified the defendant to pay no more rent to the plaintiff, and promised that if he had any trouble he would back him, and on the same day he executed a written lease to the defendant for five months from August 1st, 1877, at a monthly rent of $44.64, payable on the first day of each month. No rent was ever paid by the defendant to Hotchkiss, but it was agreed between them that it should be applied on a contract for the purchase of the same premises made in 1873 between Joseph Scott, then in life, and Hotchkiss, which the defendant had assumed. Upon the facts thus briefly stated two general questions of law arise:—

1st. Assuming that the defendant would otherwise be liable to pay rent to the plaintiff, was he absolved from such obligation by being compelled to yield the possession to Hotchkiss, who had title paramount to the plaintiff?

2d. Are the allegations in the declaration, and the facts as found, sufficient to enable the plaintiff to recover in this action?

To make available the defense referred to in the first question it is not necessary that there should have been an actual eviction of the defendant under process and judgment of law, but a constructive ouster will suffice, for, if he cannot hold lawfully, the law is not so unreasonable as to require him to hold unlawfully at the peril of a suit and certain judgment against him.

But certain things are indispensable to justify the surrender and make it complete as a defense. The person to whom he yields the possession must have title paramount to the plaintiff coupled with a present right of entry, and there must be an actual entry, and the defendant must act in good faith without collusion with the party entering. *Morse* v. *Goddard*, 13 Met., 177.

That the title of Hotchkiss was paramount is conceded, but was there a present right of entry on his part? This is to be determined with reference to the time of the ouster, which was July 27th, 1877, if ever. Our answer to the inquiry depends upon another question—whether the lease from Hotchkiss to Camp was then in force? If not in force, it was on account of the non-payment of rent for the period of thirty days after due and the consequent acts of Hotchkiss. Only two payments are in question, for the two quarters, one ending April 1st, and the other July 1st, 1877. The latter however may at once be excluded from the inquiry, for the reason that at the date of the alleged ouster, July 27th, the thirty days allowed for payment had not expired, and until then it is obvious that there could be no right of forfeiture. The inquiry therefore may be narrowed down to the rent of April 1st, 1877. It is conceded that this was not paid either on April 1st or within thirty days thereafter. Hotchkiss therefore had an undoubted right to terminate the lease for that cause. It did not however terminate by virtue of the stipulations in the lease unless he so elected, nor unless he took all the essential steps prescribed by law for that purpose.

Before discussing the legal effect of the steps taken, we will remark that the finding leaves it very doubtful whether Hotchkiss intended his proceedings as a re-entry or its equivalent, or as only laying the foundation for future legal proceedings which he threatened at the time, and which were in fact brought on the 8th of August following. And if he did intend a re-entry at the time, it is equally doubtful whether he intended to terminate the lease for the non-payment of the rent due April 1st, for although that rent had been demanded soon after it was due, yet nothing further took place relative to it or between the parties till July 26th, which was after another quarter's rent had become due, that of July 1st, and then there was a specific demand for the latter alone, no reference being made to the other quarter's rent at all unless in a very general way, when he offered to turn one full quarter's rent toward the repairs. But after Camp insisted that his bill for repairs exceeded the entire rent, he then claimed that Camp had forfeited his right to the possession by non-payment of rent, and said he should take means to eject him. What rent he did not say, but it would naturally be supposed to refer to the rent just demanded and refused.

But however this may be, and assuming that the claim for forfeiture was predicated on the April rent, by making a particular demand for the quarter's rent due July 1st, which was subsequent to the act which worked the forfeiture, did he not affirm that the lease was in full life, and so elect to waive the forfeiture?

There seems to be no disagreement in the authorities relative to the legal proposition that receiving or distraining for rent that becomes due after the act which might work a forfeiture, if known to the lessor, is a waiver of the right to enter which he cannot recall. *Pennant's Case*, 3 Coke, 64; *Doe* v. *Rees*, 4 Bing. N. C., 384; *Roe* v. *Harrison*, 2 T. R., 425; *Goodright* v. *Cordwent*, 6 T. R., 219; *Garnhart* v. *Finney*, 40 Mo., 449; *Gomber* v. *Hackett*, 6 Wisc., 323; *Collins* v. *Canty*, 6 Cush., 415; *Bleecker* v. *Smith*, 13 Wend., 530; Taylor's Land. & Tenant, 7th ed., §§ 497, 498, and cases cited in the notes.

Camp *v.* Scott.

And all the well considered cases hold that such a distraint for rent is a waiver, though insufficient goods are found to satisfy the demand, upon the ground that the act of attempting thus to enforce the collection of the rent implies an affirmance of the lease as a still subsisting tenancy, though the effort was unsuccessful. *Jackson* v. *Sheldon*, 5 Cowen, 448; *Wilder* v. *Ewbank*, 21 Wend., 587; *Conway* v. *Starkweather*, 1 Denio, 113; *Smith* v. *Saratoga Co. Fire Ins. Co.*, 3 Hill, 508. In *Dendy* v. *Nicholl*, 4 Com. Bench, N. S., 376, it was held that a right of entry for breach of a covenant in a lease is waived by the lessor's bringing an action for rent accruing subsequent to the breach with knowledge of its existence, and that this is only a more solemn and formal mode of making demand.

But the precise question under consideration, whether a mere demand without suit for rent which accrued after the act claimed to work a forfeiture is a waiver, we do not find discussed except in a few cases by the English courts, which we will presently refer to. And while it is conceded that the decisions leave the question somewhat in doubt, yet we discover at least a decided inclination to hold that where there has been a breach of a covenant in a lease giving the lessor a right of re-entry at his election, the mere demand for rent subsequently due may be a waiver. And it seems to us that the principle of all the leading cases logically applied must lead to that result. The waiver we are considering is not founded on the doctrine of estoppel, nor on the idea of a rescission of the old contract and the making of a new one, requiring the active concurrence of both parties; but simply on the ground that the act or omission in question, involving a breach of the covenants, has made the lease voidable, not at the election of the lessee, but only at the election of the lessor; and that any act whatsoever on his part by word or deed with knowledge of what has been done, which signifies his election to affirm the lease, is decisive.

The principle is stated by Bramwell, B., in *Croft* v. *Lumley*, 6 House of Lords Cases, 705, as follows:—"The common expression, 'waiving a forfeiture,' though sufficiently correct

for most purposes, is not strictly accurate. When a lessee commits a breach of covenant on which the lessor has a right of re-entry, he may elect to avoid or not avoid the lease, and he may do só by word or deed. If with notice he says under circumstances that bind him that he will not avoid the lease, or does an act inconsistent with his avoiding it, as distraining for rent, or demanding subsequent rent, he elects not to avoid the lease." This is quoted with approval in *Clough* v. *North Western Railway Co.*, L. Reps. 7 Exch., 26, 34.

In *Ward* v. *Day*, 4 Best & Smith, 337, Blackburn, J., explains the nature of this election on the part of a lessor and how it is to be known that it has been made, as follows: "How is it to be known that an election has been made? It is laid down in Com. Dig., tit. *Election* (C. 1.) 'that a determination of a man's election shall be made by express words, or by act.' The cases are uniform in this, that where a lease has been forfeited and there is an election to enter or not, if the landlord either by word or by act determines that the lease shall continue in existence and communicates that determination to the other party, he has elected that the other shall go on as his tenant, and that the tenancy shall continue, and having done so he cannot draw back, as is also laid down in Com. Dig., tit. *Election* (C. 2.) 'If a man once determines his election, it shall be determined forever.' In *Green's Case*, Cro. Eliz., 3., where the lessor, who was seeking to recover by taking advantage of a forfeiture for non-payment of rent, had stated to the lessee that he was his fermor, and so communicated to him that he (the lessor) considered him his tenant, the court held that this was sufficient to determine the election, and that the plaintiff could not insist on a forfeiture, for he had, after the time when the rent ought to have been paid, signified his determination that the estate should continue, though only by words which he might never have intended to have that effect."

In *Doe* v. *Birch*, 1 Mees. & Wels., 402, which was an action of ejectment for a forfeiture, the effect of a demand for rent was discussed. The demand was made by an agent whose authority to make it was not fully established; the question of

waiver therefore did not distinctly arise. Parke, B., in giving the opinion, said that if the question had arisen he thought "that an absolute, unqualified demand of the rent, by a person having sufficient authority, would have amounted to a waiver of the forfeiture, and it would have been like the case cited from Croke's Reports." The case referred to was *Green's Case*, Cro. Eliz., 3, (supra,) where calling the party a tenant, in a receipt for by-gone rent, was held to be sufficient evidence of a waiver, though the receipt of the rent (being before the forfeiture) would not be a waiver.

In *Blyth* v. *Dennett*, 13 Com. Bench., 178, it was held that a demand of rent accruing subsequently to the expiration of a notice to quit is not necessarily a waiver of the notice, but that it was a question of intention to be left to the jury. The counsel for the defendant cited *Doe* v. *Birch*, (supra,) when Maule, J., interrupting said:—"There is this difference between a determination of a tenancy by a notice to quit and by a forfeiture, in the former case the tenancy is put an end to by agreement of the parties, which determination of the tenancy cannot be waived without the assent of both; but in the case of a forfeiture the lease is voidable only at the election of the lessor. In the one case the estate continues, though voidable; in the other the tenancy is at an end." The making of such a distinction implied that the judge thought a demand for rent, in the case of a forfeiture, (such as this case is,) much more decisive as a waiver than in the case of a mere notice to quit, and yet as to the latter the court held that it was evidence from which the jury might find the waiver.

But even if we concede that there was no waiver we think Hotchkiss failed to exercise his right to terminate the lease according to the rules prescribed for that purpose, the strict observance of which was indispensable.

Some of these rules are stated in the opinion of Storrs, C. J., in *Bowman* v. *Foot*, 29 Conn., 333, where the rules of the common law are expressly recognized as of binding force in this state. It is to be remarked that the lease to which these rules were applied was nearly identical in phraseology

with the one in the case at bar, except that the latter allows an additional thirty days during which payment may be made to avoid a forfeiture. And it was there held that the lease by the non-payment of rent did not become void, but voidable at the option of the lessor, and that, to take advantage of his right to avoid the lease, it was necessary for the lessor, 1st, to have made demand for the rent on the day it fell due, on the premises, and at a convenient hour before sunset; and 2d, upon neglect to pay the rent, to make a re-entry on the premises, or in some other positive manner assert the forfeiture of the lease.

The finding fails to show any compliance with these rules either as to the time or the place of demand. No demand was made on the last day the rent was payable, nor even on the day it became due, but only "soon after it became due for the quarter ending April 1st," which in the absence of any other allegation would not be construed as on the same day; and however it may be as to the time the demand was made nothing is found as to the place where it was made.

In *Bowman* v. *Foot*, (supra,) the court, in stating the rule of the common law as to making demand on the day the rent fell due, had no occasion to explain the rule as applicable to a case like this, where there can be no forfeiture if the rent is paid within thirty days after due, so as to show on which day the demand must be made, whether on the day when the rent is due, or on the last day it is payable, to avoid a forfeiture. This is clearly explained in note 16, to the case of *Duppa* v. *Mayo*, 1 Saund., 282, as follows: "The demand must be made precisely upon the day when the rent is due and payable by the lease to save the forfeiture. As where the proviso is that if the rent shall be behind and unpaid by the space of thirty days, or any other number of days, after the day of payment, it shall be lawful for the lessor to re-enter, a demand must be made on the thirtieth or other last day."

In this discussion we have assumed that the parties by the terms of the contract have not dispensed with the rules of the common law. By reference to the lease it will be seen that there are two provisions as to what may be done by the

Camp *v.* Scott.

lessor upon a breach of the covenants in the lease. One is that he may re-enter, and so far the language is similar to the lease in *Bowman* v. *Foot*, and a re-entry as at common law is obviously intended. Then follows a provision as to what may be done without such re-entry, the language being as follows: "It being understood that no demand for the rent, and no re-entry for condition broken as at common law, shall be necessary to enable the lessor to recover possession pursuant to the statute relating to summary process, but that all right to any such demand or any such re-entry is hereby expressly waived by the said party of the second part." Here the waiver in the final clause we think clearly relates only to what had gone before, the conjunction "but" so connecting it with the preceding clause as to forbid any construction of it that would make it an independent provision and a waiver for all purposes. We think therefore that the lessor can not avail himself of this waiver except by founding his proceedings upon the statute with regard to summary process, and that only the first mentioned provision is applicable to the present case.

If this construction were not so clearly required by the whole paragraph taken together we should yet feel bound to give it, so long as the language will clearly admit of it, under the rule that a provision for a forfeiture of a lease will always be construed strictly as against the lessor and in such a way as to prevent, rather than aid, the forfeiture.

The foregoing reasons lead us to the conclusion that the special defence relied upon cannot prevail, and that the first question must be answered in the negative.

We will proceed next to the discussion of the second question—whether the allegations in the declaration and the facts as found are sufficient to entitle the plaintiff to judgment in his favor.

It was claimed in behalf of the plaintiff that the pleadings do not put in issue the sufficiency of the declaration and that therefore that part of the inquiry need not be considered.

It should be observed however that the case is reserved for the advice of this court as to what judgment should be ren-

dered, not simply upon the facts contained in the finding, but upon the entire record, and if we discover a declaration so insufficient as that the judgment required by the facts would be a nullity, such judgment ought not to be advised. See 1 Swift's Digest, 783. If however the facts show a good cause of action and the declaration though defective is amenable, we should ordinarily upon a reservation advise judgment contingently upon such amendment.

The declaration contains two counts, one in assumpsit, on the guaranty before described, and the other in covenant, founded upon the covenants of Joseph Scott, the father of the defendant, as contained in his lease from the plaintiff.

The object of the latter count, which we will first consider, is to hold the defendant, Walter Scott, liable for the covenants of Joseph Scott, deceased, relative to the payment of the rent reserved in the lease ; and for this purpose the lease and the covenants of each party are set forth, and the fact that Joseph Scott entered into possession under the lease, paying rent until he died in the year 1877. Then follows the only averment attempting to connect the defendant with the lease, in these words :—"When the defendant, who is the son and heir at law of said Scott, entered into the possession of said premises under and by virtue of the stipulations and covenants of said lease, and paying rent as therein stipulated to the plaintiff from the 1st day of February, 1877, to the 1st day of August, 1877." Then follows the allegation that the defendant is still in possession, the amount of accrued rent, the statement that the plaintiff had kept his covenants and that the defendant had not paid the rent, "contrary to the true meaning and intent of said lease and of the covenant so made by said defendant as aforesaid."

The declaration is so inartificially drawn that it is exceedingly difficult to determine whether the pleader intended to make the defendant liable as heir of Joseph Scott simply because he is heir, or to make him liable because by his own act he assumed the covenants contained in the lease. It is not necessary for us to say which construction must be given, for if either should be adopted the declaration will still lack

Camp *v.* Scott.

some indispensable allegations and the finding some essential facts.

Only two facts are alleged to impose the burden of these covenants on the defendant.   One is, that he is heir of Joseph Scott, deceased, and the other that he entered into possession under the stipulations in the lease paying rent.   In the breach it is alleged that the defendant's neglect to pay rent was "contrary to the covenant so made by him as aforesaid."   But there are only the two facts I have mentioned to show how the covenant became the defendant's.

It is too manifest for argument that the fact that the defendant is heir and that his ancestor covenanted for himself and his heirs, imposes no liability on him to perform the covenants.   The covenants of an ancestor do not run with the blood and cannot be inherited.   They may run with the land, that is, with the title, though not with bare possession, and in some cases the heir is bound on account of the estate he has received from his ancestor.   But here there is no allegation or proof that any estate, real or personal, belonging to Joseph Scott came into the defendant's hands, or that he had any right or title to the lease or the leased premises.   The bare fact of possession is unavailing, because the mere possession of premises leased to another under written covenants cannot impose the burden of those covenants on the possessor.

The allegations showing that the defendant personally assumed the covenants are all wanting.

Neither the declaration nor the finding discloses by what right or title the defendant held the possession, and his liability would seem to depend on this omitted matter.   He might have entered into possession by permission of the plaintiff under the guaranty, or as sub-tenant by permission of his father's administrator, or without permission from any one; but neither of these modes of acquiring possession would make him liable in covenant.   It is well settled that as between the lessor and an under-tenant of the original lessee there is neither privity of estate nor of contract, and therefore a lessor cannot sue an under-tenant upon the lessee's covenant to pay rent.   Taylor's Land. & Tenant, 7th ed., § 448; *Hol-*

*ford* v. *Hatch*, 1 Doug., 183; *Quackenboss* v. *Clarke*, 12 Wend., 555; *Harvey* v. *McGrew*, 44 Tex., 412.

If the defendant was in possession as an assignee of the lease he might be liable, but this fact is neither averred in the declaration nor found by the court. 1 Swift Dig., 358; Taylor's Land. & Tenant, 7th ed., § 437, and cases cited in notes. The facts of possession and of the payment of rent to the landlord would be evidential facts to show that he was assignee, but the latter is the ultimate fact which should be averred and found.

For these reasons we advise judgment for the defendant on the count in covenant.

We come now to consider the count in assumpsit. This is founded on the special guaranty signed by the defendant, which was undoubtedly intended by both parties to make the defendant responsible for the rent.

But this count is said to be bad because no sufficient consideration is alleged. The only allegation of consideration is in the words of the contract itself:—"for and in consideration of the letting of the premises above described, and for value received."

The general rule undoubtedly is, that in declaring on simple contracts the real consideration must be specially alleged that the court may see that it is sufficient. *Kean* v. *Mitchell*, 13 Mich., 207. But there are exceptions to this rule.—1st. In the case of all contracts which of themselves import a consideration. "In bills of exchange and negotiable promissory notes and some other legal liabilities, the mere statement of the liability which constitutes the ground of action is sufficient." 1 Swift Digest, 686.—2d. In case of promissory notes not negotiable, although they do not of themselves import a consideration, yet if expressed to be for value received they may be set forth in the declaration in terms, without averring a special consideration. 1 Swift Dig., 429; *Raymond* v. *Sellick*, 10 Conn., 484; *Jerome* v. *Whitney*, 7 Johns., 321; *Hemminway* v. *Hickes*, 4 Pick., 497.

We think the same rule may well be extended to cases of guaranty written on a note, or a lease like this. The fact

that on its face it is expressed to be for value received raises a presumption of a legal consideration, but it is only a presumption which may be rebutted by proof. *Raymond* v. *Sellick*, 10 Conn., 480.

The defendant having the burden of proof to overcome this primâ facie case, failed to show that there was no good consideration. On the other hand the finding, although it makes no reference in express terms to any consideration, yet presents a state of facts from which we can see that a consideration might arise to support the defendant's promise. Within two days after his father's death, namely, on the 1st of February, 1877, he entered into possession of the premises and carried on business there, and was in possession on the 5th day of March following. This occupancy made him liable to pay rent to somebody. The lease for the remainder of the term belonged to his father's estate, but he was permitted, in what way does not appear, to have the benefit of it. Under these circumstances it seems to us that there would be a good consideration for his guaranty to the landlord, executed on the 5th day of March, that the rent should be paid.

There is one respect in which the declaration is defective. Construing this writing as a guaranty it is indispensable that the declaration should aver that the lessee neglected and refused to perform the covenants and pay the rent, for the defendant's liability is contingent upon the default of the lessee in this respect. The case leaves no doubt of the existence in fact of such default. The finding does not in terms say that the lessee neglected and refused to pay the rent, but it is found that Joseph Scott had paid the rent up to the time of his death, that the defendant paid it up to the 1st of August, 1877, and that no payment has since been made. This surely covers the matter in substance, though not precisely in form.

We advise judgment for the plaintiff upon the count in assumpsit, if the declaration shall be amended so as to aver the non-payment of the rent by Joseph Scott, the lessee, his executors and administrators; otherwise for the defendant.

In this opinion the other judges concurred.