[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Plaintiff's Motion for Summary Judgment [109] Cross Motion of Defendant Niantic Hospitality, LLC CT Page 354 for Summary Judgment [112]
The roots of this action are found in a lease made in June, 1972. In that lease, Springdale Enterprising Corporation was the lessor. Howard Johnson Company (Inc.) was the lessee. The lease envisioned that the leasehold would be "utilized only for the purpose . . . of a Howard Johnson's Restaurant . . . and . . . a Howard Johnson's Motor Lodge." Lease, Certification of Service of Exhibits, December 3, 1997. [106] The dispute here focuses on land where signs advertising the restaurant facility were placed. As the restaurant was well back from any road, and not visible from any road, the signs were vital to the success of the restaurant.
The plaintiff, ELXSI, is a successor to the original lessee.
The defendant Niantic Hospitality, LLC (Niantic) is the present lessor. Immediately before Niantic became lessor, ZETA East Lyme Hotel, Inc. (ZETA) was the lessor.
In 1996, ZETA and others, brought an action against ELXSI in the United States Bankruptcy Court for the Southern District of New York seeking a determination that the lessee, ELXSI (plaintiff ELXSI here), had no rights in the property upon which the advertising signs were located. Complaint, Exhibit F to Memorandum of Plaintiff ELXSI In Support of Its Motion For Summary Judgment, January 30, 1998. The plaintiff here, ELXSI, prevailed in that action.
In this action, plaintiff ELXSI claims the institution and prosecution of the New York action violated the covenant of quiet enjoyment in the June 1972 lease.
At oral argument on the cross motions for summary judgment, defendant Niantic acknowledged that it was responsible to plaintiff ELXSI for the delicts, if any, of ZETA, in bringing and maintaining the action in the New York Bankruptcy Court. Transcript of Proceedings, July 2, 1998, p. 19-20.
Plaintiff ELXSI relies on two provisions of the June 7, 1972 lease agreement. They are set forth verbatim here:
 XI CT Page 355
LESSOR'S TITLE:
. . . Lessor further covenants and warrants that so long as the Lessee fulfills the conditions and covenants of this Lease required by it to be performed, it will have, during the term hereof, or any extensions thereof, peaceful and quiet possession of the demised premises. Lessor further warrants that it has good right, full power and lawful authority to make this lease for the term and any extension hereof.
 Lessor further warrants that in the event of a breach of this covenant, whether intentional or otherwise, Lessor will pay all costs and damages resulting therefrom to the Lessee, or its assigns, including reasonable attorneys' fees. . ..
 VIII
WHERE LESSEE PAYS LESSOR'S OBLIGATIONS:
 Whenever the Lessor shall breach or fail to perform any of the covenants or provisions of this lease, and such failure or breach shall cause the Lessee to incur any damages or expenses whatsoever, then and in that event such damages or expenses so incurred by the Lessee with legal interest thereon and including penalties, costs and reasonable attorneys' fees, may be deducted from the rental payments due under this lease."
Lease dated June 7, 1972 by and between Springdale Enterprising Corporation and Howard Johnson Company (Inc.); Exhibit A to Memorandum of Plaintiff ELXSI In Support of Its Motion for Summary Judgment, January 30, 1998. [109.50]
In this action, plaintiff ELXSI alleges:
 "28. ZETA East Lyme breached the covenant of quiet enjoyment in the Lease by instituting a frivolous lawsuit against ELXSI in the New York Action.
 "29. ELXSI has been damaged by the breach in the amount of at least $75,000.00, from the monies it incurred defending itself in the New York Action and instituting this lawsuit.
* * *
 "31. The institution of the frivolous New York Action by CT Page 356 Niantic's predecessor in interest was a breach of the covenant of quiet enjoyment which covenant Niantic expressly granted to ELXSI in the Lease.
 "32. As a result, ELXSI is entitled to "all costs and damages . . . including a reasonable attorneys' fees" which it incurred defending itself in the New York Action. Lease, VIII.
 "33. Moreover, ELXSI is entitled under the terms of the Lease to withhold rent up to the amount it has been damaged by the breach. Lease, VIII.
 "34. ELXSI is therefore entitled to a declaratory judgment stating that Niantic owes ELXSI its attorneys' fees, costs and expenses incurred in connection with defending itself in the New York Action, and that it may withhold rent from its lessor until it has recouped its damages."
Complaint, October 6, 1997. [104]
Parts of the record of the New York action have been submitted to this court. Several facts have been gleaned from that record.
The Complaint against ELXSI in the New York action contained the following allegations:
 "1. This action arises out of the improper attempts by defendant ELXSI (`ELXSI') to hold up the sales of two properties by plaintiffs that were expressly contemplated by the Amended Joint Plan of Reorganization filed by the above-captioned Debtors in this case on May 15, 1992, as subsequently amended (the `Plan') and confirmed by this Courts order of confirmation dated December 15, 1992 (the `Confirmation Order'). The purported basis for the holdup is claimed easements' on the two properties. These so-called easements' were never created, were never recorded, were long ago abandoned even if they ever were valid, and were expressly eliminated pursuant to the Plan and Confirmation Order. The assertion of these purported easements' is threatening to derail the immediate sale of one of the two properties and the sale of the other, is being done solely for purposes of holding up the sales and to extort unconscionable fees from plaintiffs or the potential buyers of the properties, and is being done in knowing and willful violation of the Plan and this Court's Confirmation Order.
CT Page 357
 "2. Plaintiff's seek a declaration that defendant does not have the rights it claims, a finding that defendant is violating the Plan and Confirmation Order and is acting in knowing and willful contempt of the Confirmation Order, an injunction prohibiting any such interference in the future, and damages for the injury already caused." Complaint dated June 11, 1996, New York Action Bankruptcy Court action, Exhibit F to Memorandum of Plaintiff ELXSI in Support of Its Motion For Summary Judgment, January 20, 1998. [109.50]
The prayer for relief in the New York action stated:
 "WHEREFORE, plaintiffs pray for judgment against defendant as follows:
 (a) declaring that plaintiffs possess the Properties free and clear of all encumbrances (except for certain mortgages held by plaintiff ESA), including any encumbrances that are claimed to have been created by the purported `sign agreements';
 (b) finding that defendant has violated the Plan and confirmation Order and holding it in contempt of the Confirmation Order;
 (c) declaring that the `sign agreements', to the extent valid at all, were rejected pursuant to the Plan and Confirmation Order, were not assigned to or assumed by any of the plaintiffs, and are unenforceable as against the Properties, any of the plaintiffs, or any transferees thereof (including the Buyer);
 (d) voiding any `easements' purportedly created by the `sign agreements' under Sections 544 and 550 of the Bankruptcy Code;
 (e) declaring that defendant has no valid entitlement under the `sign agreements,' specifically vis-a-vis the plaintiffs in this action or any transferees thereof (including the Buyer);
 (f) entering an injunction prohibiting defendant from interfering with plaintiffs' attempts to sell the Properties;
 (g) awarding compensatory and punitive damages against defendant in an amount to be ascertained at trial;
CT Page 358
 (h) awarding plaintiffs the costs and disbursements of this action, including plaintiffs' attorneys' fees; and
 (i) awarding plaintiffs such other and further relief as this Court deems just and proper.
Complaint dated June 11, 1996, New York Action Bankruptcy Court action, Exhibit F to Memorandum of Plaintiff ELXSI in Support of Its Motion For Summary Judgment, January 20, 1998. [109.50]
The sale of the premises ELXSI leased was part of the reorganization plan which had been approved by the New York Bankruptcy Court. According to the New York Bankruptcy Court Complaint, ELXSI was asserting rights under its lease, namely. to the land upon which its signs were located. The prospective buyer apparently was unwilling to complete the sale if ELXSI had these rights. The New York case was brought seeking a determination that ELXSI had no such rights under its lease and to stop ELXSI from claiming those rights.
The New York Bankruptcy judge announced his decision orally. He stated in part:
 "I believe that what I have said disposes of the issues raised by this motion for summary judgment. To summarize, it is my conclusion that the paragraph on page five of the lease agreement for both the East Lyme and the Mystic properties under the heading Signs must be construed as conveying to the lessee a leasehold interest in that portion of the lessor's real estate on which the sign would be erected and maintained. I further conclude that the combination sign agreement does not have the effect of either amending or construing the lease agreement in a manner different from the construction that should be placed upon the lease agreement in the absence of the combination sign agreement. As a consequence of that holding in those conclusions, I conclude further that Elxsi, as the current lessee under the lease and successor to Howard Johnson's, has all those rights with respect to the sign and the real estate upon which the sign is erected of any lessee of property. Absent any law to the contrary — and I'm not aware of any law to the contrary — that would affect the normal rights of a lessee.
 "Elxsi as lessee of the sign and the real estate on which CT Page 359 it sits has the right to continue to use the real estate and the sign and to exclude others from using the sign or the real estate on which it sits without paying some agreed consideration for doing so. This does not mean that Elxsi has the right to require payment from the owner or a primary lessee if it's a ground lease of the property in question, let us say the motor hotel property on which the sign is located, but it does mean that if the owner of the motor hotel property, the plaintiffs or their successors, wish to have the sign changed from its current condition, that they must seek to negotiate permission from Elxsi as lessee of the sign and the ground on which it sits to change the sign.
 "In reaching these conclusions, of course I express no opinion as to what rights, if any, any surrounding or adjacent property owner may have under Connecticut law with regard to the condition of the sign or its continued use or perpetuation under applicable zoning laws or anything of the sort. I am deciding here only the issue which I believe to be before me, which is what the property rights are under the lease and the combination sign agreement."
Transcript of Proceedings, July 26, 1996, Exhibit I to Memorandum of Plaintiff ELXSI in Support of Its Motion For Summary Judgment, January 20, 1998. [109.50]
The New York Bankruptcy Court judgment provides:
 "Final judgment as to all claims is to enter forthwith declaring that, pursuant to the terms of [the case] . . . Defendant [ELXSI] had the right to erect, and continues to have the right to maintain, permit and from time to time remove, the signs which are the subject of Plaintiffs' complaint located on the adjacent respective Plaintiff lessor's property, that the nature of the defendant's interest in the land on which the signs sit is a leasehold that Plaintiffs are not entitled to any damages, and that all remaining claims, including but not limited to Count V for Tortious Interference with Contract, are hereby dismissed." Order, November 1, 1996, Exhibit J to Memorandum of Plaintiff ELXSI in Support of Its Motion For Summary Judgment, January 20, 1998. [109.50]
Significantly, plaintiffs in the New York action (predecessors of the defendant Niantic here) did not ask the New York court to oust ELXSI from the premises or even from any part of it. Nor did CT Page 360 they seek to have ELXSI restricted from using the property in any way.
Even if the plaintiffs in the New York action had been successful in obtaining a judgment that the ELXSI asserted rights did not exist, the New York court was not asked to remove ELXSI from any of the property or to restrict ELXSI's use of the property. This court cannot speculate on what those plaintiffs might have done vis-a-vis ELXSI if they were armed with a judgment in the New York action to the effect that the rights ELXSI asserted did not exist.
Thus, even if ELXSI had lost in the New York Bankruptcy Court action, that alone would not have directly and inevitably lead to ELXSI's ouster or restriction of its use. It would be hard for the court to rule that the initiation and prosecution of that action was a violation of the covenant of quiet enjoyment.
The dispositive issue here is simple to state: Does a landlord violate the covenant of quiet enjoyment by taking legal action to determine its tenant's rights to leased property, even though the tenant's actual possession and use of the property is not disturbed?
ELXSI's complaint does not allege that it lost possession of the premises or any part thereof. Nor is there any allegation that ELXSI's use of any of the leased property had been effected adversely.
ELXSI's brief contains a section, "Statement of Undisputed Facts." This statement sets forth the essential facts ELXSI claims entitles it to summary judgment. It has 24 paragraphs. Memorandum of Plaintiff ELXSI In Support of Its Motion For Summary Judgment, January 30, 1998, pp. 2-7. There is no statement of fact that ELXSI ever lost possession of any part of the premises or that ZETA "ha[d] done or suffered some act by which the premises [were] rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." Conference Center Ltd. v. TRC, 189 Conn. 212, 220 (1983).
Furthermore, ELXSI makes no claim that it should have been relieved of paying rent for any period of time. This is strong indication that it was not ousted of possession, even constructively. CT Page 361
Defendant Niantic counters that there was no violation of the covenant of quiet enjoyment because ELXSI never lost possession or use of any of the leased property.
ELXSI maintains that the institution and maintenance of "the New York action unequivocally sought ELXSI's ouster from that portion of ELXSI's leasehold interest occupied by the signs." Memorandum of Plaintiff ELXSI in Support of Its Motion for Summary Judgment, January 30, 1998, p. 14. Quoting fromConference Center, ELXSI argues that this court should look to the New York action to determine its "effect on the tenants continued capacity to enjoy the use of the leasehold property.' Id. at 222." Memorandum of Plaintiff ELXSI In Support of Its Motion For Summary Judgment, January 30, 1998, p. 13. [109.50]
The court has examined those parts of the record of the New York action which have been submitted to it. As stated, it cannot find that the New York action plaintiffs sought a direct ouster or eviction of ELXSI from any of the leased property. What the New York plaintiffs sought was a determination that ELXSI had no rights in the property which was the situs of the signs. The record here makes clear that ELXSI never lost the use or enjoyment of the property. In the words of Conference Center
quoted by ELXSI, the New York litigation brought about no ill "effect on the [ELXSI's] continued capacity to enjoy the use of leasehold property."
ELXSI has not brought any authority to the court's attention for the proposition upon which it relies, namely, that a landlord's action to thwart leasehold rights claimed by its tenant is a breach of a covenant of quiet enjoyment. The court has been unable to find any such authority. Thus, it presumes that ELXSI's omission indicates that it is unaware of any authority that the mere institution of such an action is a violation of the covenant of quiet enjoyment.
Not surprisingly, there is authority that such an action does not violate a covenant of quiet enjoyment.
 "The institution and maintenance of legal proceedings that might ultimately lead to tenant's eviction are not a breach of the covenant of quiet enjoyment. The proceedings might not be completed, or if they are the tenant may not be evicted . . . Landlord's unsuccessful maintenance of bona fide proceedings to dispossess tenant is no breach." [Footnotes omitted.] 3 CT Page 362 Friedman on Leases, § 29.06, p. 1621.
There is no indication that the plaintiffs in the New York action sought anything more than a determination that ELXSI did not have the rights it [ELXSI] claimed and which claims were of some concern to the prospective buyer. What that buyer might have done vis-a-vis ELXSI is much to remote for this court to consider. In any event the New York action did not result in any loss of possession or use.
Another authority states:
 "A legal proceeding interfering with the title and possession of the demised premises is a breach of the covenant of quiet enjoyment, but the mere apprehension of eviction because of the commencement of the legal proceedings does not constitute a breach.
 "A legal proceeding interfering with the title and possession of land may constitute a breach of the covenant of quiet enjoyment, but a mere apprehension of eviction created in the tenant's mind by virtue of a legal proceeding does not constitute a breach of the covenant of quiet enjoyment. Thus the mere commencement of legal proceedings against the lessee relating to his title or right to possession is not sufficient to constitute a breach of the covenant unless the suit was instituted maliciously and without probable cause." [Footnotes omitted.] 51 C.J.S. Landlord Tenant, § 323(3)b.
The New York action did not involve even a claim for possession. ELXSI's fears of what might have happened if the plaintiffs there had prevailed cannot be the basis for a finding that the covenant of quiet enjoyment has been breached.
This court has held that the covenant of quiet enjoyment is not breached if there has been no loss of possession. In Pullen v.Morris, Judicial District of New Haven, No. 304627; 8 CSCR 621
(1993), the tenants sued their landlords. The landlords had brought a summary process action. The tenants prevailed in that action. The tenants brought an action for damages against the landlords claiming, among other claims, a breach of the covenant of quiet enjoyment. The court stated:
 "As to count three, the plaintiffs claim that the defendants' institution of a summary process action, as well as other CT Page 363 acts and conduct, amounted to breach of the lease concerning the plaintiffs' right to possession and quiet enjoyment. The defendants argue that since the eviction action was unsuccessful, the plaintiffs never lost possession or were evicted, so they may not claim such a breach of the lease.
 "`The covenant of quiet enjoyment is that the grantee shall have legal quiet and peaceful possession, and is broken only by an entry on and an expulsion from the land or from an actual disturbance of possession by virtue of some paramount title or right.' Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22, 25, 358 A.2d 365 (Super.Ct. 1976). A constructive eviction arises where a landlord, while not actually depriving the tenant of the leased premises, has done or suffered some act which renders the premises untenantable. Thomas v. Roper, 162 Conn. 343, 349, 294 A.2d 321 (1972). In order to claim constructive eviction, the tenant must abandon the property within a reasonable time. Welk v. Bidwell, 136 Conn. 603, 609, 73 A.2d 295 (1950); see also Thomas v. Roper, supra, 349.
 "The various documents filed by the parties show that the plaintiffs occupied the demised premises for the entire term of the lease. Therefore, the plaintiffs have not shown the facts necessary to support a claim for breach of possession and quiet enjoyment as a matter of law. Accordingly, the motion for summary judgment is granted as to the third count." Pullen v. Morris, Judicial District of New Haven, No. 304627, 8 CSCR 621, 622 (1993).
The New York action relied upon by ELXSI as the basis for its claim of a violation of the covenant of quiet enjoyment does not make as strong a claim as the action to evict involved in Pullen. In Pullen, the underlying action was a summary process action. If the landlord succeeded, the tenants would be forced out of possession. The New York action ELXSI complains of only sought a determination that ELXSI did not have certain rights. In that action the plaintiffs did not request that ELXSI be ousted from possession or use. It is clear ELXSI has "occupied the demised premises for the entire term of the lease [to date]. Therefore, ELXSI [has] not shown the facts necessary to support a claim for breach of possession and quiet enjoyment as a matter of law." Id.
In another case, the court was more explicit:
 "The covenant of quiet enjoyment is . . . broken only by an CT Page 364 entry on and expulsion from the land or from actual disturbance of possession by virtue of some paramount title or right. 20 Am. Jur 2d, Covenants, Conditions and Restrictions, §§ 97, 98." Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22, 25 (1976).
ELXSI was not subjected to "an entry on and expulsion from the land." Nor was there an "actual disturbance of [ELXSI's] possession." Id. There has been no breach of the covenant of quiet enjoyment.
Both parties rely in some measure on Conference Center Ltd. v.TRC, 189 Conn. 212 (1983). That action involved the alleged breach of a written lease. "The issue . . . was whether a tenant has been constructively evicted when served with a demand for immediate possession by a mortgagee initiating foreclosure proceedings against the tenant's landlord." 189 Conn. 213.
The holder of the mortgage on the leased premises brought an action to foreclose. In that action, TRC (defendant tenant) was served with a demand for immediate possession. Defendant vacated and returned the keys to the plaintiff-landlord. In response to the landlord's suit alleging a breach of the lease, the tenant filed three special defenses claiming the foreclosure brought a about a (1) termination of the lease, (2) a breach of the covenant of quiet enjoyment, and, (3) a constructive eviction.189 Conn. 214. The trial court granted the defendant-tenants motion for summary judgment. In opposing the motion for summary judgment, plaintiff filed documents which placed in question whether the foreclosing bank actually intended to take possession of the leased premises.
 "The Bank manifested some intention to implement its paramount title, upon CCL's default, by commencing a foreclosure action in which it served the defendant with foreclosure papers demanding immediate possession. At the time when the defendant abandoned the premises, the Bank had not, however, exercised its power to enter into possession nor had it demanded a new lease from the defendant." 189 Conn. 220.
 Conference Center held that it was error for the trial court to have granted summary judgment. There was a genuine issue of material fact. "[S]ince the actual impact of the foreclosure proceeding as a constructive eviction raises a genuine issue of material fact." 189 Conn. @ 224. CT Page 365
Analogizing to Conference Center, the plaintiffs in the New York action never exercised, or attempted to exercise, any power to enter into possession. They had no such power. No entry into possession occurred. No ouster or loss of possession by ELXSI occurred. There was no violation of quiet enjoyment.
To some extent, ELXSI relies upon the principle of "constructive eviction." The law on "constructive eviction" is clear.
 "The Connecticut law of constructive eviction is equally not in dispute. The classic statement is that found in Amsterdam Realty Co. v. Johnson, 115 Conn. 243, 248, 161 A. 339
(1932), where this court held that [a] constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent. A tenant is constructively evicted when compelled to yield possession to a third party with title paramount to that of its landlord. Such a constructive eviction may occur in advance of an actual eviction, for, if he cannot hold lawfully, the law is not so unreasonable as to require him to hold unlawfully at the peril of a suit and certain judgment against him. Camp v. Scott, 47 Conn. 366, 369
(1879). To prove a constructive ouster, however, the facts must demonstrate that the person with paramount title [made] a re-entry on the premises, or in some other positive manner [asserted] the forfeiture of the lease. Id., 374. Whether there has been such interference with the tenant's peaceful enjoyment of the premises as to render the leasehold untenantable cannot be determined by general principles but depends instead on an inquiry in every instance [into] the facts of the particular case. By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed. Reid v. Mills, 118 Conn. 119, 122, 171 A. 29 (1934); accord, Thomas v. Roper, 162 Conn. 343, 347, 294 A.2d 321
(1972); Hayes v. Capitol Buick Co., 119 Conn. 372, 378-79, 176 A. 885 (1935); Tungsten Co. v. Beach, 92 Conn. 519, 524, 103 A. 632 (1918).
 "Authorities from other jurisdictions have discussed the point in time when a tenant is constructively evicted by a CT Page 366 mortgagee's action to foreclose a paramount mortgage on the leasehold premises. Focusing on the requirement that the tenant demonstrate actual and serious deprivation of the use contemplated by the parties to the lease, the cases have refused to conclude that a constructive eviction necessarily follows from the mere initiation of foreclosure proceedings. See John R. Thompson Co. v. Northwestern Mutual Life Ins. Co., 31 F. Sup. 399, 400 (N.D.Ohio 1937); Standard Livestock Co. v. Pentz, 204 Cal. 618, 625-26, 269 P. 645 (1928); Hyde v. Brandler, 118 A.2d 398, 399-400 (D.C. 1955); Metropolitan Life Ins. Co. v. Childs Co., 230 N.Y. 285, 289, 130 N.E. 295 (1921). The secondary authorities, building upon these cases and a few others, have universally agreed with the Restatement (Second), Property (1977) 4.3, comment d, that [t]he institution of foreclosure proceedings by a mortgagee who has a paramount title is not an eviction of the tenant. See, e.g., 3 Friedman on Leases (1978) 29.201, 29.202; 3 Thompson on Real Property (1959) 1132, p. 499.
 "The defendant TRC urges us to reject these authorities because they emanate from jurisdictions that have rejected the title' theory of mortgages. We find them distinguishable for a different reason. Read closely, the cases and the secondary authorities recognize that the overarching issue is not the particular step taken by the foreclosing mortgagee but rather its effect on the tenant's continued capacity to enjoy the use of the leasehold property. The Restatement itself, earlier in comment d to 4.3, acknowledges that the tenant has been constructively evicted [w]here the tenant has not been ousted from possession by the assertion of the paramount title but the assertion prevents the use contemplated by the parties. Friedman Opines that [n]ormally, the institution of possessory proceedings . . . is no breach of a covenant of quiet enjoyment. 3 Friedman on Leases (1978) 29.202, p. 1089. Since the law of constructive eviction is fact-bound, no conclusive effect can be attached to the institution of mortgage foreclosure proceedings. In the proper circumstances; see Thomas v. Roper, supra, 346-47; initiation of such proceedings may well constitute a constructive eviction; under other circumstances it will not.
 "From the vantage point of the law of constructive eviction, it is therefore significant that while there has been a formal demand for possession of the leasehold premises, the letter attached to the plaintiff's affidavit opposing summary judgment CT Page 367 creates uncertainty about the extent of the mortgagee's intended interference with the defendant TRC's continued occupancy. While offering the defendant some assurances, the letter, as the plaintiff CCL conceded at oral argument, falls short of committing the Bank to acceptance or ratification of the defendant's lease.
 "Put together, the law of mortgages and the law of landlord and tenant demonstrate that while the defendant TRC may have a valid defense to the plaintiff CCL's cause of action, the defendant has yet to prove it. At this juncture, it is clear that the trial court, Wright, J., was correct in refusing to strike TRC's first three defenses and to leave TRC to its proof. The trial court, O'Donnell, J., was, however, in error in concluding that TRC was entitled to summary judgment, since the actual impact of the foreclosure proceedings as a constructive eviction raises a genuine issue of material fact. Because a remand is therefore required in order for this question to be fully considered, it is useful to inquire what commercial law may add to fair resolution of the dispute between the parties." [Footnote omitted. Internal quotation marks omitted.] Conference Center Ltd. v. TRC, 189 Conn. 212, 220-223 (1983).
With that discourse on "constructive eviction," it is clear that ELXSI has not established the factual basis for "constructive eviction." It never lost possession of or use of any part of the premises. ELXSI was not constructively evicted.
In its Complaint, ELXSI describes the New York Bankruptcy Court action as "frivolous." Complaint, October 6, 1997, Count I, ¶ 28; Count II, ¶ 28 and 31. [104] ELXSI acknowledges this characterization is of no moment here. "It is irrelevant to this proceeding whether the [New York Bankruptcy Court] lawsuit was frivolous or not." ELXSI's Memorandum In Opposition To Niantic's Cross Motion For Summary Judgment And In Support of ELXSI's Motion For Summary Judgment, May 21, 1998, p. 7. [120]
Regarding summary judgment, the Rules of Practice state:
 "The judgment sought shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." [Emphasis added.] Practice Book, § 17-49.
CT Page 368
ELXSI claims in a memorandum:
 "2. ELXSI's rights were violated when it was denied access to the areas of the leased premises where it maintains signs, ordered to remove its signs, prevented from improving one of the signs, and sued in New York to prevent access and use of the signs and underlying leased premises." ELXSI's Memorandum In Opposition To Niantic's Cross Motion For Summary Judgment And In Support of ELXSI's Motion For Summary Judgment, May 21, 1998, p. 1. [120]
With the possible exception of the claim regarding the New York suit, these claims are not made in the Complaint. The Complaint in this case does not contain allegations that (1) ELXSI was denied access to the areas of the leased premises where it maintains signs, (2) ELXSI was ordered to remove its signs, or, (3) ELXSI was prevented from improving one of the signs. Complaint, October 6, 1957. [104]
Without allegations in the Complaint, the court cannot enter judgment based on these assertions.
 "`A summary judgment is proper where the affidavits do not set forth circumstances which would serve to avoid or impede the normal application of the particular limitations period. . . . Affidavits are not pleadings, however, and a plaintiff cannot, under the guise of fortifying the complaint, present an entirely new cause of action or expand the scope of his cause of action by means of a counter-affidavit. . . . The issue must be one which the party opposing the motion is entitled to litigate under his pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment.' (Citations omitted.) Shuster v. Buckley, supra, 5 Conn. App. 47. We conclude that the trial court properly declined to address the plaintiffs' claim of a continuing course of conduct." Collum v. Chapin, 40 Conn. App. 449, 453 (1996).
The subject of the affidavits submitted by ELXSI go well beyond the allegations of ELXSI's complaint. Affidavits and/or memorandum cannot expand ELXSI's cause of action beyond that which is set forth in its Complaint.
The plaintiff's motion for summary judgment [109] is denied. CT Page 369
Defendant has also moved for summary judgment. Cross Motion of Defendant Niantic Hospitality LLC for Summary Judgment, April 15, 1998. [112] The basis for defendant's motion is that ELXSI never lost possession of or use of any of the leasehold by virtue of the New York litigation. The court has just held that there was no loss of possession or use. It follows that defendant is entitled to summary judgment.
The defendant's cross-motion for summary judgment [112] is granted.
Judgment shall enter for the defendant Niantic Hospitality LLC and against the plaintiff ELXSI.
It is so ordered.
Parker, J.